STATE EX REL. James TEUNAS, Plaintiff-
Appellant and Cross-Respondent,

v.

The COUNTY OF KENOSHA, a body corporate,
and Frederick Ekornaas, Sheriff for Kenosha
County, Defendants-Respondents and Cross-
Appellants.

Supreme Court

*No. 86–1425. Argued December 1, 1987.—Decided February 11,
1988.*

(On certification by court of appeals.)

(Also reported in 418 N.W.2d 833.)

498

For the plaintiff-appellant and cross-respondent there was a supplement brief by *James A. Walrath* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee and oral argument *James A. Walrath.*

For the defendants-respondent and cross-appellants there was a brief in court of appeals by *Michael T. Hopkins,* special prosecutor, Kenosha county, and oral argument by *Michael T. Hopkins.*

There was a amicus curiae brief by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

There was a amicus curiae brief by *Phyllis M. DeCarvalho* and *the American Civil Liberties Union/Wisconsin Foundation,* Milwaukee.

LOUIS J. CECI, J. This case is before this court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The plaintiff-appellant, James Teunas (Teunas or appellant), appeals from a judgment of the circuit court for Kenosha county, Jerold W. Breitenbach, Circuit Judge, declaring the Kenosha County obscenity ordinance, sec. 9.10.2 of the Municipal Code of Kenosha County, to be constitutional, with the exception of subsections (2)(c) and (d), which were found invalid and severed from the ordinance. Defendants-respondents, Kenosha County and Fred Ekornaas (Kenosha County or respondents), filed a cross-appeal from that portion of the judgment declaring subsections (2)(c) and (d) invalid and from the court's order permanently enjoining the enforcement of sec. 9.10.2 unless "contemporary community

standards" as set forth in the ordinance were defined in prosecution as "statewide community standards."

On January 7, 1986, the Kenosha County Board of Supervisors passed Ordinance No. 34, codified as sec. 9.10.2 of the Municipal Code of Kenosha County, which provided in part that:

> "(2) Whoever does any of the following with knowledge of the character and content of the material or performance is guilty of a violation of the Municipal Code of Kenosha County:
>
>> "(a) Imports, prints, advertises, sells, has in his or her possession for sale, or publishes, exhibits or transfers any obscene material.
>> "(b) Advertises, produces or performs in any obscene performance.
>> "(c) Has in his or her possession, with intent to transfer or exhibit to a person under the age of 18 years, any obscene material.
>> "(d) Transfers or exhibits any obscene materials to a person under the age of 18 years.
>> "(e) Requires, as a condition to the purchase of periodicals, that a retailer accept obscene material."

Obscene material was defined as:

> ".... a writing, picture, sound recording or film and 'Obscene Performance' means a live exhibition before an audience which:
>
>> "1. The average person, applying contemporary community standards, would find appeals to prurient interests if taken as a whole;
>> "2. Under contemporary community standards, describes or shows sexual conduct in a patently offensive way; and

"3. Lacks serious literary, artistic, political or scientific value as measured by objective standards if taken as a whole."

On January 21, 1986, James Teunas, an adult resident of Kenosha county, sought to have the obscenity ordinance declared unconstitutional. Teunas is the owner of a retail establishment doing business as "Video Connection" in the town of Somers in Kenosha county. Teunas alleged uncertainty regarding his ability to lawfully engage in the sale of certain video tapes and asserted that sec. 9.10.2 was unconstitutional for several reasons. The trial court found that the Kenosha County Board had acted in passing sec. 9.10.2 pursuant to its statutory authority under sec. 59.07(64), Stats., to preserve "good order." The court further found that although the obscenity ordinance deals with "matters of statewide concern," the ordinance was valid since the state had not acted in this area, and because the ordinance attempted to deal only with a "matter of local concern." However, the court concluded that subsections (2)(c) and (d) of the ordinance concerning minors conflicted with sec. 944.25, and were, therefore, invalid. Additionally, the court enjoined enforcement of sec. 9.10.2 unless prosecutions for violations of the ordinance provided for the definition of "contemporary community standards" as "statewide community standards." The court of appeals certified the following issues:

"(1) Did the Kenosha County Board lack statutory authority to enact an obscenity ordinance?
"(2) Did the Kenosha County Board lack authority to enact an obscenity ordinance because

the ordinance deals with a statewide concern rather than a local matter?

"(3) Is the Kenosha County obscenity ordinance invalid for any of the following reasons: (a) the state has preempted the field; (b) it conflicts with state law; or (c) it is vague and indefinite."

We only reach the first of the certified issues. We find that the Kenosha County Board of Supervisors did not have the statutory authority to enact the obscenity ordinance and, therefore, need not address the remaining issues.

█

The scope of county board powers is rooted in the Wisconsin Constitution. County government is established by the legislature under the authority of Wis. Const. art. IV, sec. 23,[1] and the powers of the county boards of supervisors are limited to those which are conferred by the legislature:

"The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe." Wis. Const. art. IV, sec. 22.

---

[1]Article IV, sec. 23 of the Wisconsin Constitution provides as follows:

*"Town and county governments.* ... The legislature shall establish but one system of town government, which shall be as nearly uniform as practicable; but the legislature may provide for the election at large once in every 4 years of a chief executive officer in any county with such powers of an administrative character as they may from time to time prescribe in accordance with this section and shall establish one or more systems of county government."

Thus, contrary to the direct and expansive delegation of power to municipalities under Wis. Const. art. XI, sec. 3,[2] the authority of county boards is limited. It has consequently become well recognized that "a county board has only such powers as are expressly conferred upon it or necessarily implied from the powers expressly given or from the nature of the grant of power." *Town of Vernon v. Waukesha County,* 102 Wis. 2d 686, 689, 307 N.W.2d 227 (1981). Stated otherwise: "counties are creatures of the Legislature and their powers must be exercised within the scope of authority ceded to them by the state ...." *Dane County v. Department of Health & Social Services,* 79 Wis. 2d 323, 329–30, 255 N.W.2d 539 (1977) (citing *State ex rel. Conway v. Elvod,* 70 Wis. 2d 448, 450, 234 N.W.2d 354 (1975)).

Since a county board must have a statutory source upon which the power it exercises is based, whether the Kenosha County Board of Supervisors had the authority to enact sec. 9.10.2 involves a question of statutory interpretation. The interpretation of a statute involves a question of law reviewable by this court without deference to the decision of the trial court. *Waste Management of Wisconsin, Inc. v. Department of Natural Resources,* 128 Wis. 2d 59, 81, 381 N.W.2d 318 (1986).

---

[2]Article XI, sec. 3 of the Wisconsin Constitution provides as follows:

> *"Municipal home rule; debt limit; tax to pay debt.* ... (1) Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature."

■ The general powers which the legislature has delegated to the county boards of supervisors are set forth at sec. 59.07, Stats. Kenosha County asserts, and the trial court found, that the authority to enact the obscenity ordinance exists under sec. 59.07(64), which provides that the board of each county may exercise power to "[e]nact ordinances to preserve the public peace and good order within the county." Section 59.07(64), in conjunction with the following prefatory language of sec. 59.07, is asserted by Kenosha County as compelling the conclusion that regulation of obscenity is within the power delegated to county boards: "The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language." Sec. 59.07. However, the scope of the grant of power concerning "public peace and good order" is not without ambiguity. When the precise scope of a statute's application is not defined, reference may be made to legislative history and other matters beyond the statutory language to determine its purpose and effect. *Labor & Farm Party v. Elections Board,* 117 Wis. 2d 351, 355, 344 N.W.2d 177 (1984). We, therefore, examine sources extraneous to the express language of the statute to determine whether the reference to "peace and order" is sufficiently broad to permit the exercise of power by Kenosha County to enact the obscenity ordinance.

A review of the drafting files concerning 1955 Wis. Laws, ch. 651, through which sec. 59.07 was enacted, indicates that although an initial draft of Senate Bill 535 introducing ch. 651 contained language similar to that adopted in sec. 59.07(64), this

language was in fact broader than that ultimately adopted. The initial draft of S. B. 535 provided:

"Except as elsewhere in the statutes specifically provided, each board has such powers of a local, legislative and administrative nature as are necessary for the management and control of all county property, institutions, finances, highways and navigable waters, and for the protection and promotion of the health, safety and welfare of the public and the financial and commercial benefit and government and good order of the county."

This language was, however, subsequently deleted. The language adopted in sec. 59.07(64) was later drafted in apparent response to a letter from a Wisconsin district attorney who proposed the following language: "The board of any county may enact ordinances to provide for the good order of the community and the regulation of local affairs." This language was stated to have been drafted based upon this court's decision in *State ex rel. Keefe v. Schmiege,* 251 Wis. 79, 28 N.W.2d 345 (1947), in which we held that counties may not impose criminal punishment for violation of county ordinances, but further held as follows:

"Nothing in this opinion is to be taken as in any way casting doubt upon the power of the legislature to vest in a county board or municipal council power to provide for the good order of the community by enacting ordinances regulating local affairs, provided there is not included the power in either to create crimes and impose criminal punishments. Under such a grant of power the county or municipal government may enact ordinances prohibiting some of the very acts already prohibited by state law, and in such a case there may be a

prosecution under the state law as and for a crime and a civil action under the local ordinances for the recovery of a fine." *Id.* at 86.

However, rather than vesting unlimited power to the counties to "regulate local affairs," the legislature adopted the narrower language of sec. 59.07(64), which refers to enacting ordinances to preserve "peace and good order."

Appellant asserts that the terms "peace and good order" as used in sec. 59.07(64), Stats., have a distinct meaning which does not encompass obscenity. In support of this position, appellant highlights the fact that during the same legislative session in which sec. 59.07(64) was passed, the legislature delineated in 1955 Wis. Laws ch. 696 the scope of matters relating to "public peace" and "order" in the modification and reorganization of the criminal code. The notes accompanying Assembly Bill 100, which introduced the changes to the criminal code as adopted in 1955 Wis. Laws ch. 696, indicate that an express objective of the legislation was to "[s]ystematically organiz[e] the substantive criminal law." The goal sought to be accomplished by the reorganization was that the "chapters of the code define specific crimes and group the crimes according to the social interest or interest which they are designed to protect." A.B. 100 (introductory comments). *See also* Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 353.

Significantly, the legislature separately categorized under ch. 947, Stats., those crimes which relate to crimes against "public peace, order and other interests." Included within this chapter were the crimes of "disorderly conduct," sec. 947.01, Stats. (1955); "vagrancy," sec. 947.02 (1955); "drunkenness,"

sec. 947.03 (1955); and "unlawful assemblies," sec. 947.06 (1955). Chapter 947 has been amended but currently includes crimes of a substantially similar nature.[3] Significantly absent from ch. 947 is any reference to the regulation of obscenity. This is because, in reorganizing the criminal code, the legislature created a separate chapter, ch. 944, relating to crimes against sexual morality. It is, of course, under this chapter that sec. 944.21,[4] regulating obscene material, is codified. That sec. 944.21(1)(a) was declared unconstitutional in *State v. Princess Cinema of Milwaukee, Inc.,* 96 Wis. 2d 646, 292 N.W.2d 807

---

[3] Interestingly, ch. 947 was amended to regulate "crime comics" and, hence, certain forms of speech. Sec. 947.08. The legislative declaration specifically found that such materials present a danger to the "health, safety, morals and well-being of the people of the state." Hence, while this particular form of commercial speech is regulated under ch. 947, the nature of crime comics is distinct with respect to its relationship to "public peace." Furthermore, it is more probable that the legislature codified this provision relating to juveniles under ch. 947 as it did section 947.15, which similarly concerns juveniles, for the reason that the protection of juveniles is one of the "other interests" of the state.

[4] "**944.21 Lewd, obscene or indecent matter, pictures and performances.** (1) Whoever intentionally does any of the following is guilty of a Class D felony:

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film; or

"(b) Advertises, produces or performs in any lewd, obscene or indecent performance; or

"(c) Has in his possession, with intent to transfer or exhibit to a person under the age of 18 years, any matter prohibited by this section.

"(2) Whoever requires, as a condition to the purchase of periodicals, that a retailer accept material known by the distributor to be lewd, obscene or indecent is guilty of a Class D felony."

(1980), does not obliterate the significance of the codification by the legislature of the statute pertaining to obscene material within the chapter pertaining to "Crimes Against Sexual Morality" as opposed to ch. 947, which concerns "Crimes Against Public Peace, Order and Other Interests."

 The relationship between the terms "public peace" and "order" as applied in sec. 59.07(64) and as used in ch. 947 of the criminal code may not be ignored; both sections concern the related subject matter of the protection of public peace and order and were passed during the same legislative session. This is true notwithstanding the fact that the reference in ch. 947 to "public peace" and "order" is in the title to the chapter. Generally, while a title is not part of a statute, it is indicative of legislative intent, *Pure Milk Products Cooperative v. National Farmers Organization*, 64 Wis. 2d 241, 253, 219 N.W.2d 564 (1974). The significance of the titles of chs. 944 and 947 is magnified in the present case, where the chapters were entitled by the legislature pursuant to an express attempt to reorganize the criminal code according to social interests. Therefore, to the extent that sec. 59.07(64) and ch. 947 deal with the same subject matter, they must not be interpreted in such a manner as to indicate a contradictory legislative intent. *State v. Wachsmuth*, 73 Wis. 2d 318, 325, 243 N.W.2d 410 (1976).

That the intent of the legislature in referring in sec. 59.07(64) to "public peace and good order" is consequently ·not to be so broadly interpreted as to include the power to regulate obscenity, an area contemporaneously categorized by the legislature as conceptually distinct, is further indicated by later

amendments to sec. 59.07. As noted by the appellant, in 1979 the legislature enacted sec. 59.07(104), Stats., empowering counties to enact ordinances regulating conduct similar to that prohibited by sec. 943.61 relating to library theft, and sec. 59.07(103), empowering the counties to enact ordinances prohibiting conduct similar to that prohibited by secs. 943.21 and 943.24, relating to worthless checks. If sec. 59.07(64) were to be construed as a broad police power including authority to regulate obscene material, there would have been no need for the amendment of sec. 59.07 to include these sections.

In this regard, we have considered the respondents' position that secs. (103) and (104) were adopted in response to this court's decision in *Keefe,* 251 Wis. 79. The drafter's note[5] accompanying secs. (103) and (104) does indicate, consistent with the respondents' position, that these sections were adopted in response to this court's decision in *Keefe.* As accurately recounted in the drafter's note, and as discussed above, in *Keefe* we held that while the legislature may authorize counties to prohibit conduct similar to that prohibited by state law, the county does not have the power to impose criminal punishment. The respondents proffer as an explanation for the adoption of secs. (103) and (104) the fact that the legislature deemed it necessary as a result of the *Keefe* decision to

[5]"DRAFTER'S NOTE: According to the reasoning in *State ex rel. Keefe v. Schmiege* (1946) 251 Wis. 79, and subsequent cases, the legislature may authorize counties and municipalities to prohibit conduct already prohibited by state criminal law, but the penalty for violation of the local ordinance must be civil in nature. A portion of an ordinance authorizing imprisonment is invalid as beyond the power of the county. Therefore, I specifically noted in the draft that the local authorities provide forfeitures for the ordinance violations."

specifically grant counties the authority to enact ordinances where there existed a state statute proscribing the same conduct. We are not persuaded by that analysis and find that while the reference in the drafter's note in *Keefe* may explain the reference in (103) and (104) to civil remedies, it does not explain why these sections were added if sec. (64) did, as argued by respondents, constitute a grant of a broad police power. This is particularly true since *Keefe* had been decided and similarly considered by the legislature when sec. (64) was enacted. As such, if the respondents' explanation of the motivation of the legislature in adopting secs. (103) and (104) is accepted, since *Keefe* was extant law when sec. (64) was enacted, the legislature could surely not be deemed to have intended, by adopting sec. (64), to grant counties a broad police power. Specifically, a broad police power would necessarily include concerns upon which the state had legislated; yet, except for the implied reference to ch. 947, absent from sec. (64) is any reference to such legislation.

Thus, while it is true that the prefatory language of sec. 59.07 states that the powers thereunder are to be "broadly and liberally construed," the breadth of the construction given to the delegated powers must not be so great that the later amendments would be reduced to a statement of surplusage. We have consistently avoided adopting a construction of statutes which would result in rendering a part of a statute surplusage. *Wisconsin Electric Power Co. v. Public Service Commission of Wisconsin,* 110 Wis. 2d 530, 329 N.W.2d 178 (1983); *Kollasch v. Adamany,* 104 Wis. 2d 552, 313 N.W.2d 47 (1981). For this reason, we reject an interpretation of sec. 59.07(64) which would be

sufficiently broad to include the power to regulate obscene material.

While the current attorney general has issued an opinion that the regulation of obscenity is included within the power delegated under sec. 59.07(64) and has filed an *amicus* brief in support of this position, this interpretation of the scope of the county's authority goes far beyond that previously delineated by the attorney general. We find more persuasive an earlier opinion of the attorney general in which the attorney general, in stating that ordinances covering disorderly conduct and drunkenness were within a county's power under sec. 59.07(64), quoted the following passage as representative of authority existing under statutory power to regulate public peace and order:

> "Under charter or statutory power, ordinances may be enacted against disturbing the public order and peace by disorderly or boisterous conduct; unusual noises and other boisterous and improper conduct; abusive or indecent language, cursing, swearing, or any loud or boisterous talking; drunken, noisy and disorderly conduct; disorderly shouting, dancing and assembling; noisy, rude, insulting and disorderly words or conduct toward another; affrays and fighting; riots and disorderly or boisterous assemblages; molesting religious and other lawful meetings; undue or unnecessary blowing of whistles of factories, shops and the like; playing of musical instruments at certain hours except in specified appropriate places such as homes, churches and public buildings; parading in public thoroughfares with bands of music, and making various kinds of noises, without legal permits; holding unlawful public meetings in streets and public places; and ringing bells for auction sales, etc., playing on hand organs and other musical

instruments, giving false alarms of fire, etc." 6 E. McQuillin, Municipal Corporations, 614 (3d ed. 1980) (unrevised edition quoted in 46 Op. Att'y Gen. 12, 13 (1957)).

The conduct outlined by McQuillin is consistent with that found under ch. 947 dealing with "public peace" and "order" and subsequent opinions of the attorney general. *See, e.g.,* 72 Op. Att'y Gen. 153 (1983) (authority to enact ordinance regulating false alarms); 69 Op. Att'y Gen. 92 (1980) (authority to enact ordinance regulating trespass to land); 56 Op. Att'y Gen. 126 (1967) (authority to enact ordinance regulating curfew). The ordinance in the case at bar, regulating obscene material, is of a genre facially distinct from those areas traditionally recognized as concerning public peace and order.

We recognize in our holding today that there is language in the decision of the United States Supreme Court in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49 (1973), which indicated that obscene material may implicate "the social interest in order" and "community welfare." *Id.* at 61, 63. Additionally, the Court in *Paris Adult Theatre I* found that "there is at least an arguable correlation between obscene material and crime," thus suggesting that public peace might, in a general sense, be implicated by obscene material. However, the question before us today does not require, nor entitle, this court to embark upon, a public policy analysis or review of societal questions regarding the impact of obscene materials upon public peace and good order in a general sense; rather, we are called upon to ascertain the specific intent of our legislature in the application of the terms "public

peace and good order." We are of the opinion that while the prefatory language of sec. 59.07 and the specific language of sec. 59.07(64) might, if viewed in isolation, arguably encompass the regulation of obscenity, such an interpretation would be inconsistent with legislative intent evinced by the concurrent criminal code legislation and subsequent amendments to sec. 59.07.

Likewise, in *Maier v. Racine County,* 1 Wis. 2d 384, 84 N.W.2d 76 (1957), this court similarly refused to interpret the prefatory language of secs. 59.07 and 59.07(64) as an abrogation of the rule of conservatism in implying county powers. In *Maier,* the legislative intent determined to be inconsistent with a broad interpretation of sec. 59.07(64) was based upon the legislature's express delegation of the power sought to be exercised by the county under sec. 59.07(64) to municipalities. Specifically, the delegation of power to municipalities regarding the sale of beer to persons between the ages of seventeen and twenty-one years was found to be inconsistent with an interpretation of the general power under sec. 59.07(64) to include similar regulatory power. The court's conclusion rested upon the general principle that "[w]here a general statute and a specific statute relate to the same subject matter, the specific statute controls." *Id.* at 388. On appeal herein, the appellant argues that the legislature's delegation of power to municipalities under sec. 66.051(4), Stats., to prohibit conduct "the same or similar to that prohibited by chs. 941 to 947" is a specific delegation of power to regulate obscenity such as to preclude an interpretation of sec. 59.07(64) to include like powers. We do not adopt such an analysis herein, since sec. 66.051(4) is not a specific delegation of power such as was the case in *Maier.*

Section 66.051(4) provides that "Nothing in this section shall be construed to preclude cities and villages from prohibiting conduct which is the same or similar to that prohibited by chs. 941 to 947." First, it should be noted that contrary to secs. 66.051(1)–(3), sec. (4) does not affirmatively grant power to regulate, but rather does not "preclude" municipal regulation as to conduct proscribed under chs. 941–947. The fact that the legislature has not precluded municipal regulation as to those matters upon which the legislature has enacted legislation under chs. 941–947 cannot fairly be construed as a "specific" grant of power. Second, to the extent that such power is delegated under sec. 66.051(4), since sec. 944.21(1)(a), Stats., was in *Princess Cinema* declared unconstitutional, there is no effective statute under chs. 941–947 prohibiting conduct "the same or similar to" the regulation of obscene material. An unconstitutional law "in legal contemplation has no existence." *Heileman Brewing Co. v. City of La Crosse,* 105 Wis. 2d 152, 161, 312 N.W.2d 875 (Ct. App. 1981) (quoting *John F. Jelke Co. v. Beck,* 208 Wis. 650, 661, 242 N.W. 576 (1932)). Stated otherwise, even if sec. 66.051(4) were a specific grant of authority to regulate, that grant would not include the power to regulate obscene material. Therefore, while similarly reaching a holding rejecting an expansive interpretation of sec. 59.07(64), we do not base our decision upon the existence of a specific delegation of like power to a municipality. Rather, we find, as explained above, a direct indication of legislative intent inconsistent with the broad interpretation of sec. 59.07(64) proposed by respondents to exist in the contemporaneously enacted chs. 944 and 947 and subsequently enacted secs. 59.07(103) and (104).

We find sec. 9.10.2 of the Municipal Code of Kenosha County to be invalid as an unauthorized exercise of county power. Therefore, we need not, and do not, address the questions of state preemption, the statutory authority to delegate such power, or whether the ordinance as passed is unconstitutionally vague. In rendering our decision today, we are cognizant of the legitimate concern of and assuredly commendable goals sought to be achieved by the Kenosha County Board. In 1980, sec. 944.21(1)(a), Stats., regulating obscene material, was declared unconstitutional. While the failure of the legislature to adopt a new statute concerning obscene material may have caused frustration and constituted the motivation of the county board to resort to its own regulatory authority, the fact remains that the county board's authority is limited. In order to address concerns regarding the regulation of obscene material, appeal may be made, and can only be made, to our state legislature.

In accordance with our findings, we affirm the judgment of the trial court finding invalid and permanently enjoining enforcement of subsections 9.10.2(2)(c) and (d) of the Kenosha County ordinance but reverse that portion of the judgment finding valid the remainder of the ordinance. We remand with instructions to vacate the injunction which permits enforcement of the ordinance if "contemporary community standards" are prosecuted as "statewide community standards" and direct the court to enter a judgment enjoining the enforcement of the ordinance without qualification.

*By the Court.* —The judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded with directions.