EDWARD E. LEINEWEBER, District Attorney Richland County
You ask for my opinion on the following question: in light of the Wisconsin Supreme Court's decision in State ex rel. Teunas v.Kenosha County, 142 Wis.2d 498, 418 N.W.2d 833 (1988), do counties possess the statutory authority to enact ordinances prohibiting battery, theft, trespassing and the issuance of bad checks?
It is my opinion that counties are authorized to enact ordinances prohibiting the issuance of bad checks and trespassing but do not have the authority to enact ordinances prohibiting battery and theft.
Pursuant to the provisions of Wis. Const. art. IV, § 23, "the powers of the county boards of supervisors are limited to those which are conferred by the legislature[.]" Teunas,142 Wis.2d at 503. Thus, it is well established that "a county board has only such powers as are expressly conferred upon it or necessarily implied from the nature of the grant of power." Townof Vernon v. Waukesha County, 102 Wis.2d 686, 689,307 N.W.2d 227 (1981).
The question of a county's authority to enact an ordinance prohibiting the issuance of worthless checks can be answered easily. Such authority has been expressly conferred. Section59.07(103), Stats., authorizes a county board to "[e]nact and enforce an ordinance to prohibit conduct which is the same as or similar to conduct prohibited by s. 943.21 or 943.24, or both, and provide a forfeiture for a violation of the ordinance." Section 943.24 prohibits the intentional issuance of worthless checks. A *Page 39 
county therefore has express authority to enact a worthless check ordinance, assuming, of course, that the ordinance is similar to and not in conflict with section 943.24.
There are no statutes comparable to section 59.07(103) that expressly confer upon a county the authority to enact ordinances prohibiting trespassing, theft or battery. If such authority exists, it can be found only under section 59.07(64), which confers upon a county board the general power to "[e]nact ordinances to preserve the public peace and good order within the county."
Section 59.07(64) was created by chapter 651, Laws of 1955, as part of a legislative revision of section 59.07. It has been the subject of several opinions issued by me and my predecessor attorneys general. In the earliest of these opinions, 46 Op. Att'y Gen. 12 (1957), it was stated that the statutory revision "was apparently intended to broaden the county board's powers." That opinion concluded that section 59.07(64) authorized a county's enactment of ordinances prohibiting disorderly conduct and public drunkenness. Other opinions have interpreted section59.07(64) to authorize county enactment of ordinances regulating curfew, 56 Op. Att'y Gen. 126 (1967); prohibiting trespass to land, similar to section 943.13, 69 Op. Att'y Gen. 92 (1980); and prohibiting false alarms, 72 Op. Att'y Gen. 153 (1983).
In the most recent opinion on section 59.07(64), I concluded that its grant of general power to enact ordinances in furtherance of "public peace and good order" did not authorize a county's enactment of an ordinance prohibiting the possession and sale of marijuana. 77 Op. Att'y Gen. 205 (1988) My opinion was based upon the Wisconsin Supreme Court's analysis of section59.07(64) in State ex rel. Teunas v. Kenosha County, 142 Wis.2d 498,418 N.W.2d 833 (1988).
You ask whether, in light of Teunas, a county possesses the authority under section 59.07(64) to enact ordinances prohibiting theft, battery and trespass to land. With respect to trespass, the question is whether Teunas has undermined my predecessor's opinion in 69 Op. Att'y Gen. 92 (1980), that section 59.07(64) *Page 40 
confers upon counties the power to enact trespass ordinances. While Teunas is not precise in its analysis of the issue, I believe that Teunas supports, rather than undermines, the prior trespass opinion. I also believe that under Teunas counties do not possess the authority to enact theft and battery ordinances.
In Teunas, the Wisconsin Supreme Court concluded that section59.07(64)'s grant of power to counties to enact ordinances to preserve "the public peace and good order" did not authorize Kenosha County's enactment of an obscenity ordinance similar to section 944.21. The court noted that in the same session in which it had created section 59.07(64), the Legislature had also reorganized the criminal code and had placed in chapter 947 "those crimes which relate to crimes against `public peace, order and other interests.'" Teunas, 142 Wis.2d at 507. Among the crimes placed in chapter 947 were prohibitions on disorderly conduct, vagrancy, drunkenness and unlawful assemblies. Id. at 507-08. The court further noted that the chapter had been amended since its creation, but still contains crimes of a "substantially similar nature." Id. at 508 (footnote omitted). Most significantly, the court observed that in reorganizing the criminal code, the Legislature had created a separate chapter relating to crimes against sexual morality. It was in this chapter, chapter 944, that the Legislature ultimately placed the obscenity statute that Kenosha County sought to enact in county ordinance form. Id.
Because section 59.07(64) and chapter 947 were created in the same legislative session, the court stated in Teunas that their respective uses of "public peace" and "order" could not be ignored. Id. at 509. Thus, the court concluded that "public peace and good order," as used in section 59.07(64), is "not to be so broadly interpreted as to include the power to regulate obscenity, an area contemporaneously categorized by the legislature as conceptually distinct." Id.
But the court's analysis did not conclude there. The court did not hold that a county's authority to enact ordinances in the *Page 41 
interest of preserving "public peace and good order" is limited to the enactment of ordinances prohibiting conduct found in chapter 947 of the statutes. Instead, the court upheld the authority of counties to adopt ordinances dealing with conduct outside of chapter 947 when that conduct falls within "those areas traditionally recognized as concerning public peace and order." Id. at 513. What kind of conduct is that? The court answered that question by relying upon a passage from a municipal law treatise, a passage quoted in 46 Op. Att'y Gen. 12, 13 (1957). The court said:
 We find . . . persuasive an earlier opinion of the attorney general in which the attorney general, in stating that the ordinances covering disorderly conduct and drunkenness were within a county's power under sec. 59.07(64), quoted the following passage as representative of authority existing under statutory power to regulate public peace and order:
 "Under charter or statutory power, ordinances may be enacted against disturbing the public order and peace by disorderly or boisterous conduct; unusual noises and other boisterous and improper conduct; abusive or indecent language, cursing, swearing, or any loud or boisterous talking; drunken, noisy and disorderly conduct; disorderly shouting, dancing and assembling; noisy, rude, insulting and disorderly words or conduct toward another; affrays and fighting; riots and disorderly or boisterous assemblages; molesting religious and other lawful meetings; undue or unnecessary blowing of whistles of factories, shops and the like; playing of musical instruments at certain hours except in specified appropriate places such as homes, churches and public buildings; parading in public thoroughfares with bands of music, and making various kinds of noises, without legal permits; holding unlawful public meetings in streets and public places; and ringing *Page 42 
bells for auction sales, etc., playing on hand organs and other musical instruments, giving false alarms of fire, etc." 6 E. McQuillin, Municipal Corporations, 614 (3d ed. 1980) (unrevised edition quoted in 46 Op. Att'y Gen. 12, 13 (1957)).
 The conduct outlined by McQuillin is consistent with that found under ch. 947 dealing with "public peace" and "order" and subsequent opinions of the attorney general. See, e.g, 72 Op. Att'y Gen. 153 (1983) (authority to enact ordinance regulating false alarms); 69 Op. Att'y Gen. 92 (1980) (authority to enact ordinance regulating trespass to land); 56 Op. Att'y Gen. 126 (1967) (authority to enact ordinance regulating curfew). The ordinance in the case at bar, regulating obscene material, is of a genre facially distinct from those areas traditionally recognized as concerning public peace and order.
Teunas, 142 Wis.2d at 512-13.
Pursuant to Teunas, it appears that counties have authority under section 59.07(64) to enact ordinances dealing with conduct prohibited in chapter 947 as well as conduct in "areas traditionally recognized as concerning public peace and order."Id. at 513. A "representative," but not necessarily exclusive, list of such conduct is found in the McQuillin passage quoted by the court. And the conduct listed in the McQuillin passage is deemed by the court to be "consistent" with the conduct dealt with in the cited attorney general opinions, including 69 Op. Att'y Gen. 92 (1980), which upheld the authority of counties to enact trespass ordinances. Thus, while the issue is hardly free from doubt, the court in Teunas appears to have approved 69 Op. Att'y Gen. 92 (1980), and to have upheld a county's authority to adopt a trespass ordinance under section 59.07(64).
While trespass has apparently been deemed by the court inTeunas as conduct in an area "traditionally recognized as concerning public peace and order," it is my view that battery and theft cannot be so described. Neither offense appears in *Page 43 
chapter 947. The statutes prohibiting various forms of theft are found in chapter 943. The statutory prohibitions on the various forms of battery are found in chapter 940. Neither battery nor theft appears in the "representative" McQuillin list of offenses cited by the court in Teunas.
I, therefore, conclude that counties possess the statutory authority to enact and enforce ordinances prohibiting the issuance of bad checks and trespassing but do not have the authority to enact and enforce ordinances prohibiting battery and theft.
DJH:WLG *Page 44