# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP400 |
| COMPLETE TITLE: | James A. Black, Glen J. Podlesnik and Steven J. Van Erden, |
| |     Plaintiffs-Respondents-Petitioners, |
| | Milwaukee Professional Fire Fighters Association Local 215, |
| |     Intervenor-Plaintiff-Respondent-Petitioner, |
| | Milwaukee Police Association and Michael V. Crivello, |
| |     Plaintiffs-Respondents-Cross-Appellants-Petitioners, |
| |       v. |
| | City of Milwaukee, |
| |     Defendant-Appellant-Cross-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 364 Wis. 2d 626, 869 N.W.2d 522)
(Ct. App. 2015 – Published)
PDC No: 2015 WI App 60

| | |
|---|---|
| OPINION FILED: | June 23, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 24, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Paul R. Van Grunsven |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | BRADLEY, R. G., J. concurs (Opinion filed). |
|   CONCURRED/DISSENTED: | BRADLEY, A. W., J. and ABRAHAMSON, J. concur and dissent (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiffs-respondents-petitioners, intervenor-plaintiff-respondent-petitioner, and plaintiffs-respondents-cross-appellants-petitioners, there were briefs by *Jonathan Cermele*, *Brendan P. Matthews*, and *Cermele & Matthews, S.C.*, Milwaukee, and *John F. Fuchs*, *Rebecca Boyle*, and *Fuchs & Boyle*

*S.C.*, Milwaukee.  Oral argument by *Jonathan Cermele* and *John F. Fuchs*.

For the defendant-appellant-cross-respondent, there was a brief by *Grant F. Langley*, Milwaukee City Attorney and *Miriam R. Horwitz*, Milwaukee Deputy City Attorney, and oral argument by *Miriam R. Horwitz*.

There was an amicus curiae brief by *Richard M. Esenberg*, *Thomas C. Kamenick, Kenneth Chesebro*, Cambridge, MA (pro hac vice), and *Wisconsin Institute for Law & Liberty*, Milwaukee.

There was an amicus curiae brief by *Luke N. Berg*, deputy solicitor general with whom on the brief was *Brad D. Schimel*, attorney general and *Misha Tseytlin*, solicitor general.

There was an amicus curiae brief by *Claire Silverman* and *League of Wisconsin Municipalities*.

2

No. 2014AP400
(L.C. No. 2013CV5977)

STATE OF WISCONSIN         :        IN SUPREME COURT

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

**James A. Black, Glen J. Podlesnik and Steven J. Van Erden,**

        **Plaintiffs-Respondents-Petitioners,**

**Milwaukee Professional Fire Fighters Association Local 215,**

        **Intervenor-Plaintiff-Respondent-Petitioner,**

**Milwaukee Police Association and Michael V. Crivello,**

        **Plaintiffs-Respondents-Cross-Appellants-Petitioners,**

    **v.**

**City of Milwaukee,**

        **Defendant-Appellant-Cross-Respondent.**

**FILED**

**JUN 23, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed in part and reversed in part.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of a published decision of the court of appeals, which affirmed in part and reversed in part the Milwaukee County Circuit Court's[1] grant of summary judgment in favor of the Milwaukee Police Association ("Police Association") and the Milwaukee Professional Fire Fighters Association Local 215 ("Fire Fighters Association"). Black v. City of Milwaukee, 2015 WI App 60, 364 Wis. 2d 626, 869 N.W.2d 522.

¶2 This case requires us to interpret and apply Article XI, § 3(1) of the Wisconsin Constitution, better known as the home rule amendment. "Adopted in 1924, the home rule amendment was intended to provide cities and villages with greater autonomy over local affairs," while still retaining the Legislature's power to legislate. Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶89, 358 Wis. 2d 1, 851 N.W.2d 337 (footnotes omitted). Accordingly, the home rule amendment gives cities and villages the ability "to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."[2] Wis.

---

[1] The Honorable Paul R. Van Grunsven presided.

[2] In Madison Teachers, Inc. v. Walker, 2014 WI 99, 358 Wis. 2d 1, 851 N.W.2d 337, we noted, "The home rule amendment does not apply to counties in Wisconsin. However, counties have home rule protection pursuant to statute, though it is more limited than the protection afforded by constitutional municipal home rule." 358 Wis. 2d 1, ¶89 n.26.

2

Const. art. XI, § 3(1). In other words, a city or village may, under its home rule authority, create a law that deals with its local affairs, but the Legislature has the power to statutorily override the city's or village's law if the state statute touches upon a matter of statewide concern or if the state statute uniformly affects every city or village. See Madison Teachers, 358 Wis. 2d 1, ¶101.

¶3    In the present case, we interpret and apply the home rule amendment to determine whether a section in the City of Milwaukee's ("the City" or "Milwaukee") charter can trump a statute enacted by the Legislature. Since 1938, Milwaukee has required its city employees to comply with a residency requirement or face termination of their employment. Its residency requirement is set forth in section 5-02 of the City's charter. Put simply, it requires city employees to reside within city limits. In 2013, the Legislature enacted Wis. Stat. § 66.0502 (2013-14).[3] Simply stated, Wis. Stat. § 66.0502 prohibits cities, villages, towns, counties, and school districts[4] from requiring their employees to reside within their jurisdictional limits. It is obvious the charter and the statute conflict: one imposes a residency requirement and one bans residency requirements. Despite enactment of Wis. Stat.

---

[3] All subsequent references to the Wisconsin Statutes are the 2013-2014 version unless otherwise noted.

[4] As noted in an earlier footnote, the home rule amendment applies only to cities and villages. Wisconsin Stat. § 66.0502 applies to any city, village, town, county, or school district.

3

§ 66.0502, the City has continued to enforce its residency requirement.[5]

¶4 The City claims that it can continue to enforce its residency requirement pursuant to its home rule authority under Article XI, § 3(1) of the Wisconsin Constitution. The City contends that its residency requirement (contained in section 5-02 of its charter) involves a matter of "local affairs" because (1) the City has an interest in maintaining a tax base from which to draw revenue; (2) the City has an interest in its employees sharing a common community investment as Milwaukee residents; and (3) the City has an interest in efficiently delivering city services. Moreover, the City argues that Wis. Stat. § 66.0502 cannot trump section 5-02 because it does not with uniformity affect every city or every village. It believes that "uniformity" must be understood as "actually affecting all municipalities in equal measure uniformly." According to the City, Wis. Stat. § 66.0502 fails to satisfy the home rule amendment's uniformity requirement because it does not impact all cities or villages in equal measure.

¶5 In contrast, the Police Association claims that the City can no longer enforce its residency requirement because Wis. Stat. § 66.0502 trumps section 5-02 of the City's charter. The Police Association contends, in relevant part, that

---

[5] In their briefs, both the City and the Police Association state that the parties have agreed that the City will not act to enforce its residency requirement until our final decision on the merits.

residency requirements constitute a matter primarily of statewide concern because (1) when the Legislature enacted Wis. Stat. § 66.0502, it found that "public employee residency requirements are a matter of statewide concern;" and (2) the Legislature may legislate on matters that concern public health, safety, and welfare, and here, it is reasonable to presume that the Legislature determined that residency requirements negatively impact the welfare of public employees. Additionally, the Police Association argues that Wis. Stat. § 66.0502 trumps section 5-02 of the City's charter because Wis. Stat. § 66.0502 with uniformity affects every city or village. Unlike the City, it believes that "uniformity" must be understood as requiring "facial uniformity." According to the Police Association, Wis. Stat. § 66.0502 is facially uniform because, by its terms, it applies to all cities, villages, towns, counties, and school districts. Finally, the Police Association seeks relief and damages under 42 U.S.C. § 1983. It claims that the City unconstitutionally deprived it of its "liberty interest in being free from 'residency' being required as a condition of municipal employment" when the City continued enforcement of its residency requirement after the Legislature enacted Wis. Stat. § 66.0502.

¶6   This case presents two issues for our review. The first is whether Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The second is whether the Police Association is entitled to relief and damages under 42 U.S.C. § 1983.

¶7 As to the first issue, we hold that Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The Legislature has the power to legislate on matters of local affairs when its enactment uniformly affects every city or every village, notwithstanding the home rule amendment. For purposes of the home rule amendment, an enactment is uniform when it is facially uniform. Wisconsin Stat. § 66.0502 is facially uniform because it applies to "any city, village, town, county, or school district." Wis. Stat. § 66.0502 (2) (emphasis added). Because Wis. Stat. § 66.0502 uniformly affects every city or village, it trumps section 5-02 of the City's charter. As a result, Milwaukee may no longer enforce its residency requirement.

¶8 As to the second issue, we hold that the Police Association is not entitled to relief or damages under 42 U.S.C. § 1983. Its section 1983 claim fails because the Police Association has not met the requirements necessary to prevail on a section 1983 claim. Specifically, the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States.[6]

---

[6] Stated otherwise, we affirm the court of appeals' determination that the Police Association is not entitled to relief and damages pursuant to section 1983. However, we reverse the court of appeals' conclusion that, under the home rule amendment, section 5-02 of the City's charter trumps Wis. Stat. § 66.0502.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶9 For many years, Milwaukee[7] has required its city employees to reside within city limits as a condition of employment. Moreover, it has mandated discharge for any employee caught living outside its city limits. Section 5-02 of the City charter contains Milwaukee's residency rule:

> 1. RESIDENCY REQUIRED. All employe[e]s of the city of Milwaukee are required to establish and maintain their actual bona fide residence within the boundaries of the city. Any employe[e] who does not reside within the city shall be ineligible for employment by the city and his employment shall be terminated in a manner hereinafter set forth.

¶10 On June 20, 2013, the Legislature enacted 2013 Wisconsin Act 20 ("Act 20").[8] Section 1270 of Act 20 created Wis. Stat. § 66.0502, which prohibits any city, village, county, or school district from requiring an employee to live within a jurisdictional limit. Specifically, it states,

---

[7] Milwaukee is certainly not the only city that had a residency requirement prior to the enactment of Wis. Stat. § 66.0502. The record shows that 114 municipalities have some type of restriction on where their employees reside. Moreover, 13 municipalities required all their employees to live within the municipal limits. The record also shows that 20 counties have some type of residency restriction on where their employees reside. Further, 3 counties require all or most of their employees to live within the county. See Legis. Fiscal Bureau, No. 544, Local Government Employee Residency Requirements, at 3 (May 9, 2013).

[8] The Governor signed Act 20 on June 30, 2013, and the Act took effect on July 2, 2013.

(1) The legislature finds that public employee residency requirements are a matter of statewide concern.

(2) In this section, "local governmental unit" means any city, village, town, county, or school district.

(3)(a) Except as provided in sub. (4), no local governmental unit may require, as a condition of employment, that any employee or prospective employee reside within any jurisdictional unit.

(b) If a local governmental unit has a residency requirement in effect on July 2, 2013, the residency requirement does not apply and may not be enforced.[9]

_____

[9] Wisconsin Stat. § 66.0502 contains exceptions that permit a 15 mile residency requirement for law enforcement, fire, or emergency personnel:

(4)(a) This statute does not affect any statute that requires residency within the jurisdictional limits of any local governmental unit or any provision of state or local law that requires residency in this state.

(b) Subject to par. (c), a local governmental unit may impose a residency requirement on law enforcement, fire, or emergency personnel that requires such personnel to reside within 15 miles of the jurisdictional boundaries of the local governmental unit.

(c) If the local governmental unit is a county, the county may impose a residency requirement on law enforcement, fire, or emergency personnel that requires such personnel to reside within 15 miles of the jurisdictional boundaries of the city, village, or town to which the personnel are assigned.

(d) A residency requirement imposed by a local governmental unit under par. (b) or (c) does not apply to any volunteer law enforcement, fire, or emergency personnel who are employees of a local governmental unit.

Wis. Stat. § 66.0502(4)(a)-(d).

Wis. Stat. § 66.0502(1)-(3)(b).

¶11 On the day Act 20 took effect, the City's Common Council passed a resolution titled, "Substitute resolution directing all City officials to continue enforcement of s. 5-02 of the Milwaukee City charter relating to residency." It states, in pertinent part,

> This resolution directs all City officials to continue enforcement of s. 5-02 of the Milwaukee City Charter relating to residency of City employees. The Common Council finds that legislative action, and specifically the enactment of 2013 Wisconsin Act 20, s. 1270, violates the City's constitutional home rule authority under Article XI, Section 3(1), of the Wisconsin State Constitution. Section 1270 purports to prohibit most municipal laws requiring employee residency including provisions of the Milwaukee City Charter.
>
> The Common Council further finds that acquiescence to this unconstitutional exercise of state authority would significantly harm the interests of the City and its residents.
>
> . . . .
>
> [] The issue of local residency is not a matter of state-wide concern but is instead clearly a matter of "local affairs and government" to be determined by local governments that are directly accountable to local voters; and
>
> [] In 1938, as an exercise of its Constitutional Home Rule authority, the City of Milwaukee enacted a charter ordinance, now City Charter s. 5-02, requiring that all employees reside within the boundaries of the City . . . .

Furthermore, the resolution listed justifications for the Common Council's decision to pass the resolution, such as (1) "the need to ensure that sufficient staff are able to respond in a timely manner to" emergencies; (2) the need to "minimize[] the City's

response time;" (3) the need for city employees to "contribut[e] to the City's economy; (4) and the desire for city employees to have "better knowledge of neighborhoods and enhanced relationships with residents."

¶12 The City's Mayor signed the resolution on the same day the Common Council passed it. In addition, the Mayor publicly announced that the City would terminate the employment of any employee found to be in violation of its residency requirement.

¶13 On July 10, 2013, the Police Association[10] filed suit against the City in Milwaukee County Circuit Court. The Police Association sought a declaratory judgment, pursuant to Wis. Stat. § 806.04,[11] in order to determine the rights and obligations of the parties under Wis. Stat. § 66.0502, as well as a declaration that the City had violated Wis. Stat. § 66.0502.[12] Additionally, the Police Association asked for

---

[10] The Police Association filed on behalf of "itself and on behalf of its Members, Michael V. Crivello, James A. Black, Glenn J. Podlesnik, and Steven J. Van Erden." For readability purposes, we refer to this group collectively as the "Police Association."

[11] Wisconsin Stat. § 806.04(1) provides, in pertinent part, "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

[12] At one point, the Police Association also sought a writ of mandamus compelling the City to begin complying with Wis. Stat. § 66.0502 by ceasing enforcement of its residency requirement. However, as the circuit court noted in its decision and order, "[The Police Association] is no longer pursuing the writ of mandamus set forth as the third cause of action in the complaint . . . ." Accordingly, we do not consider whether the Police Association is entitled to a writ of mandamus.

10

relief and damages under 42 U.S.C. § 1983. It claimed that it was entitled to relief under section 1983 because the City violated its liberty interest to be free from residency requirements as a condition of employment when its Common Council passed, and the Mayor signed, the resolution.

¶14 Some time later, the Fire Fighters Association intervened in the action. It sought an "adjudication of the constitutionality and enforceability of § 66.0502 of Wisconsin Statutes," and "a permanent injunction enjoining the City of Milwaukee from enforcing any ordinances, resolutions, policies, orders, or directives in any form, in contravention of the rights of the members of Local 215 under § 66.0502 of the Wisconsin Statutes."[13] All parties moved for summary judgment.

¶15 On January 27, 2014, the circuit court held a hearing on the parties' motions for summary judgment. That same day, the court issued a decision and order. Regarding the home rule amendment, the circuit court succinctly stated its findings in its concluding paragraph:

> This Court finds that Wis. Stat. § 66.0502 deals with a matter primarily of statewide concern and applies uniformly to all local government units in this state. The enactment of Wis. Stat. § 66.0502 withdrew from local governments the power to regulate the matter of residency requirements for municipal employees, and thereby removed the issue of residency from the scope of home rule authority under art. XI, sec. 3(1), Wis. Const. Consequently, the home rule amendment does not authorize the City to continue regulating residency

---

[13] In addition, the Fire Fighters Association sought costs and disbursements.

11

requirements by enforcing an ordinance which is directly contrary to the legislative mandates of Wis. Stat. § 66.0502. The City's residency ordinance and related [resolution] are unenforceable to the extent that they fail to comply with the legislative mandates of Wis. Stat. § 66.0502.

Regarding the Police Association's section 1983 claim for damages, the circuit court concluded that "Wis. Stat. § 66.0502 creates a liberty interest in freedom from residency requirements as a condition of municipal employment, except as provided by the statute." But the court did not award damages because "the City's actions thus far have not deprived any part of the liberty interest created by Wis. Stat. § 66.0502."

¶16 The City appealed, and the Police Association[14] cross-appealed. The court of appeals affirmed in part and reversed in part the circuit court's grant of summary judgment. Black v. City of Milwaukee, 2015 WI App 60, ¶3, 364 Wis. 2d 626, 869 N.W.2d 522. With respect to the section 1983 claim, the court of appeals affirmed the circuit court's decision not to award relief or damages under section 1983. Id., ¶3. It did so on the grounds that Wis. Stat. § 66.0502 "did not create a protectable liberty interest." Id., ¶35. With respect to the home rule amendment, the court of appeals concluded, "because Wis. Stat. § 66.0502 does not involve a matter of statewide concern and does not affect all local government units uniformly, it does not trump the Milwaukee ordinance." Id., ¶3 (emphasis omitted).

---

[14] Only the Police Association and Michael Crivello cross-appealed. James Black, Glenn Podlesnik, and Steven Van Erden did not cross-appeal.

¶17 In reaching its conclusion on the home rule amendment, the court of appeals expressed deep concern over the disproportionate "impact" it believed Wis. Stat. § 66.0502 could have on the City. See id., ¶¶5-8, 20-29, 33; see also id., ¶¶36-37 (Kessler, J., concurring). As a consequence of that concern, it determined that Wis. Stat. § 66.0502 primarily addressed a matter of local affairs and did not impact every city or village equally. To support its conclusions, the court of appeals relied on the Legislative Fiscal Bureau's Paper (#554), titled "Local Government and Employee Residency Requirements." According to the court of appeals, Paper #554 hypothesized that elimination of such requirements might adversely impact Milwaukee's "levels of employment, incomes, and home values in certain neighborhoods." Id. ¶6 (majority opinion).

¶18 Further, the court of appeals feared that Milwaukee might become the next Detroit: "Significantly, . . . the Legislative Fiscal Bureau paper's analysis warns that abolishing residency requirements could result in Milwaukee's suffering the same economic decline recently experienced by the city of Detroit," and "The report surmised that Milwaukee could face the same fate as [Detroit], despite arguments to the contrary . . . ." Id., ¶7. The court of appeals felt so strongly about the impact Wis. Stat. § 66.0502 might have on the City, it went so far as to state, "Regardless of what the statute's language says, the facts in the record make clear that only one city——Milwaukee——will be deeply and broadly affected." Id., ¶33 (emphasis added); see also id., ¶21 ("The facts in the record,

13

exemplified by the Legislative Fiscal Bureau's paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee." (emphasis added)). Consequently, the court of appeals ruled that section 5-02 of the City's ordinance was "still good law." Id., ¶35.

¶19 The Police Association petitioned this court for review. We granted the petition on November 4, 2015.

## II. STANDARD OF REVIEW

¶20 This case comes before the court as an action for declaratory judgment and on cross-motions for summary judgment. "When a circuit court's ruling on motions for declaratory judgment depends on a question of law, we review the ruling de novo." Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶8, 342 Wis. 2d 496, 818 N.W.2d 880. "We review the partial grant of summary judgment independently, applying the same methodology as the circuit court." In re Brianca M.W., 2007 WI 30, ¶8, 299 Wis. 2d 637, 728 N.W.2d 652. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.

¶21 In this case, we must also interpret a provision of the Wisconsin Constitution as well as a state statute. "The interpretation of a constitutional provision is a question of law that we review de novo." Appling v. Walker, 2014 WI 96, ¶17, 358 Wis. 2d 132, 853 N.W.2d 888. "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the

14

court of appeals and circuit court." In re Commitment of Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346.

### III. DISCUSSION

¶22 We first discuss whether Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. We then consider whether the Police Association is entitled to relief and damages under 42 U.S.C. § 1983.

### A. WHETHER WIS. STAT. § 66.0502 PRECLUDES THE CITY FROM ENFORCING ITS RESIDENCY REQUIREMENT

¶23 "The legislative power in this state is lodged in the legislature. When it exerts that power, it exerts it on behalf of and in the name of the people of the State of Wisconsin." Van Gilder v. City of Madison, 222 Wis. 58, 67, 267 N.W. 25 (1936). Conversely, "cities are creatures of the state legislature [that] have no inherent right of self-government beyond the powers expressly granted to them." Madison Teachers, 358 Wis. 2d 1, ¶89 (citing Van Gilder, 222 Wis. at 72-73 (citing City of Trenton v. New Jersey, 262 U.S. 182, 187 (1923) ("A municipality is merely a department of the state, and the state may withhold, grant, or withdraw power and privileges as it sees fit. However great or small, its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will."))).

¶24 Adopted in 1924, the "recognized purpose" of the home rule amendment "was to confer upon cities and villages a measure of self-government not theretofore possessed." State ex rel. v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928) ("Baxter").

15

Correspondingly, the home rule amendment permits "cities and villages to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."[15] Wis. Const. art. XI, § 3(1).

¶25 Two years ago, we clarified the relevant analytical framework for the home rule amendment:

> [O]ur home rule case law instructs us that, when reviewing a legislative enactment under the home rule amendment, we apply a two-step analysis. First, as a threshold matter, the court determines whether the statute concerns a matter of primarily statewide or primarily local concern. If the statute concerns a matter of primarily statewide interest, the home rule amendment is not implicated and our analysis ends. If, however, the statute concerns a matter of primarily local affairs, the reviewing court then examines whether the statute satisfies the uniformity requirement. If the statute does not, it violates the home rule amendment.

Madison Teachers, 358 Wis. 2d 1, ¶101.

---

[15] In full, the home rule amendment states, "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature." Wis. Const. art. XI, § 3(1) (amended 1981).

An earlier version of the home rule amendment read, "Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature." Wis. Const. art. XI, § 3(1) (1924).

¶26  The City takes issue with our recent interpretation of the home rule amendment. It believes that pursuant to the home rule amendment, a legislative enactment can trump a city charter ordinance only when the enactment <u>both</u> (1) addresses a matter of statewide concern, <u>and</u> (2) with uniformity affects every city or village. In contrast, we have held that a legislative enactment can trump a city charter ordinance <u>either</u> (1) when the enactment addresses a matter of statewide concern, <u>or</u> (2) when the enactment with uniformity affects every city or village. <u>See</u> <u>id.</u>, ¶99.

¶27 We reached our determination after analyzing and applying firmly-rooted and long-established Wisconsin Supreme Court precedent. <u>See</u> <u>id.</u>, ¶105 (highlighting "this court's long-held rule that when a charter ordinance of a home rule city concerns a matter of local affairs, conflicting legislation must be uniformly applied statewide to satisfy the home rule amendment"); <u>id.</u>, ¶109 n.32 (surveying the "ample scholarship on the topic of state constitutional home rule," and concluding that it aligned with this court's interpretation of the home rule amendment); <u>State ex rel. Harbach v. City of Milwaukee</u>, 189

Wis. 84, 86, 206 N.W.2d 210 (1925)[16] ("Harbach") ("It is obvious that the limitation placed upon the power of the legislature with reference to laws which 'shall with uniformity affect every city or every village' is confined to the 'local affairs and government' of cities and villages. With reference to all subjects that do not constitute 'local affairs,' or relate to the government of cities and villages, the legislature has the same power of classification that it had before the adoption of the home-rule amendment." (emphasis added)); Baxter, 195 Wis. at 449[17] ("The power of the legislature to legislate in the future as it has in the past has not been limited. But where the

---

[16] The home rule amendment was adopted in 1924. While our current review of the home rule amendment may be temporally removed from its adoption, the court's review and interpretation in State ex rel. Harbach v. City of Milwaukee, 189 Wis. 84, 206 N.W.2d 210 (1925) was almost simultaneous with the amendment's enactment, as that case was decided in 1925. At the time of adoption, our interpretation of the amendment (which mirrors the Harbach court's interpretation) was considered "obvious." Harbach, 189 Wis. at 86.

[17] State ex rel. v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928) examined the text, in particular the structure, of the home rule amendment, explaining,

> Power is granted to cities and villages "to determine their local affairs and government, subject only to the constitution and to such enactments of the legislature of state-wide concern as with uniformity shall affect every city or every village." The phrase "subject only to this Constitution," etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages. Nowhere do we find words of limitation upon the power of the Legislature.

195 Wis. at 445.

18

legislation of a city enacted within the scope of its home-rule powers comes in conflict with state legislation, the legislation of the city prevails over the state legislation, unless the state legislation affects uniformly every city . . . ."); Van Gilder, 222 Wis. at 84 ("When the legislature deals with local affairs and government of a city, if its act is not to be subordinate to a charter ordinance, the act must be one which affects with uniformity every city. . . . [In contrast,] [w]hen the legislature deals with matters which are primarily matters of state-wide concern, it may deal with them free from any restriction contained in the home-rule amendment. The home-rule amendment did not withdraw from the legislature its power to deal with matters primarily of state-wide concern which it possessed before the adoption of the amendment."); Thompson v. Kenosha Cty., 64 Wis. 2d 673, 686, 221 N.W. 845 (1974) ("[A]s this court held in Van Gilder v. Madison and affirmed in West Allis v. Milwaukee County, this uniformity limitation applies only if the subject of the statute concerns primarily local affairs. If the subject of the legislation is of statewide concern, the uniformity restriction is inapplicable." (footnotes omitted)); State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 530 n.16, 253 N.W.2d 505 (1977) ("Michalek") (noting that the home rule amendment limits the legislature only in the "field of local affairs of cities and villages;" thus, the home rule amendment does not limit the legislature in the field of statewide affairs (emphasis added)). Adoption of the City's argument would require us to overturn precedent from this court

19

dating back to 1925. We see no reason to toss out nearly a century's worth of precedent, and so we proceed under the framework set forth in Harbach, Baxter, Van Gilder, Thompson, Michalek, and Madison Teachers.[18]

---

[18] Similar to the City, the concurrence and the dissent believe that "a legislative enactment prevails over a conflicting city charter ordinance under the home rule amendment when the enactment both concerns a matter of statewide concern and affects every city or village with uniformity." Concurrence, ¶66; dissent, ¶121 ("A legislative act must be of statewide concern and then it must apply uniformly.").

The dissent purports to reach its conclusion by reading the text of the amendment to "mean what it says." See dissent, ¶120. Its "textual" analysis consists of a regurgitation of the home rule amendment, followed by a conclusory statement that the text of the amendment requires both a statewide concern and uniformity. Dissent, ¶¶120-21. Nowhere does the dissent attempt to engage in a true analysis of the text by pulling apart, explaining, and defining the phrases and terms used in the home rule amendment.

The bulk of the concurrence's analysis rests on an amicus brief from the Baxter case and some newspaper clippings. According to the concurrence, the amicus brief, written by the drafter of the home rule amendment, confirms that a legislative enactment must both involve a matter of statewide concern and with uniformity affect every city or every village. Concurrence, ¶62; but see State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶52, 271 Wis. 2d 633, 681 N.W.2d 110 ("Ours is a government of laws not men, and it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated. It is the law that governs, not the intent of the lawgiver . . . Men may intend what they will; but it is only the laws that they enact which bind us." (internal quotation marks omitted) (citing Antonin Scalia, A Matter of Interpretation, at 17 (Princeton University Press, 1997)).

(continued)

What the concurrence fails to note is that numerous amicus briefs in addition to the one cited by the concurrence were filed in Baxter and other home rule amendment cases. These briefs raised varying interpretations of the home rule amendment. See Harbach, 189 Wis. 84, Walter H. Bender on behalf of the Board of Trustees of Milwaukee Public School Teachers Annuity and Retirement Fund as Amicus Curiae, at 17-18 (1925) (noting that the phrase "subject to such enactments of the legislature of statewide concern as shall with uniformity affect every city or every village," "limit[s] the powers conferred upon the municipality by the grant" and "limit[s] the restrictive effect which the grant would otherwise have upon the powers of the legislature"); Baxter, 195 Wis. 437, William Ryan on behalf of Olin and Butler as Amicus Curiae, at 24 (1928) ("This limitation . . . has been seized upon by the advocates of paramount authority of cities under the home rule amendment as a limitation upon the power of the legislature, rather than a limitation upon the power granted to cities and villages by the home rule amendment. Much of the uncertainty regarding the scope of the home rule amendment seems to have arisen from this confusion of the application of the limitation; treating it as a limitation upon the power of the legislature instead of treating it as it clearly is——a limitation upon the exercise of the grant of power under the home rule amendment."); Id., William F. Hannan as Amicus Curiae, at 5 (1928) ("If, by the ratification of the home rule amendment, any restriction has been placed upon the power of the legislature to legislate with respect to municipalities (such a restriction is not conceded), it is a restriction or limitation upon the legislative power to deal with 'the local affairs of government' of cities and villages. No contention is or can be made that the power of the legislature, with respect to matters that do not constitute 'the local affairs and government' of cities and villages, has been curtailed in any way.").

(continued)

21

## 1. Whether Residency Requirements Are Primarily Of Statewide Concern Or Are Primarily Of Local Concern

¶28 We have long recognized "that the terms 'local affairs' and 'statewide concern' in the home rule amendment are problematically vague." Id., ¶113 (citing Van Gilder, 222 Wis. at 73). "Further, the terms 'local affairs' and 'statewide concern' carry the risk of oversimplifying reality [because] the 'functions of state and local governments necessarily overlap,' and moreover, the nature of government functions can change over time." Id. (citation omitted) (citing Van Gilder, 222 Wis. at 64). As a result, "home rule challenges are, by necessity, fact-specific inquiries, and determinations are made on an ad hoc basis." Id.

---

Since 1925, many Justices have been called upon to interpret the home rule amendment. These Justices had ample briefing, with numerous parties presenting varying interpretations of the home rule amendment. See, e.g., Baxter, 195 Wis. at 443-44 ("[W]e invited briefs amicus curiae [to address questions related to the home rule amendment.] The response to this invitation was most gratifying. We have been favored with excellent briefs on the part of able counsel, and we have been greatly assisted thereby in arriving definitely and clearly at the conclusions hereinafter announced."). The very first court to interpret the amendment unanimously declared that our reading of the home rule amendment was "obvious." Harbach, 189 Wis. at 86. Additionally, subsequent courts interpreting the home rule amendment have found our reading "definite[] and clear[]." Baxter, 195 Wis. at 443-44.

In short, the dissent and the concurrence may present one way to interpret the home rule amendment. But their interpretation has been outright rejected by informed Wisconsin Supreme Court Justices since 1925.

22

¶29 As part of our statewide or local concern analysis, "we have outlined three areas of legislative enactment: those that are (1) exclusively a statewide concern; (2) exclusively a local concern; or (3) a 'mixed bag.'" Id., ¶96; see also Michalek, 77 Wis. 2d at 526-28. If a legislative enactment concerns a policy matter that is exclusively of statewide concern, then the home rule amendment grants no city or village the authority to regulate the matter. Madison Teachers, 358 Wis. 2d 1, ¶97; see also Van Gilder, 222 Wis. at 84 ("When the legislature deals with matters which are primarily matters of state-wide concern, it may deal with them free from any restriction contained in the home-rule amendment."). In contrast, if a legislative enactment concerns a policy matter of "purely local affairs," then "home rule municipalities may regulate those local matters and, under the home rule amendment, state legislation that would preempt or make that municipal regulation unlawful, unless uniformly applied statewide, is prohibited." Madison Teachers, 358 Wis. 2d 1, ¶98 (citing Michalek, 77 Wis. 2d at 529). Finally, if a "legislative enactment touches on an issue that concerns both statewide and local government interests (a 'mixed bag')," then a court must determine whether the matter is "primarily" or "paramountly" a matter of statewide or local concern. Id., ¶100 (citing Michalek, 77 Wis. 2d at 528).

¶30 Here, the Legislature specially included a public policy statement in Wis. Stat. § 66.0502: "The legislature finds that public employee residency requirements are a matter of

23

statewide concern." Wis. Stat. § 66.0502(1). This court has previously held that legislative determinations regarding whether a policy matter constitutes a "statewide concern" or a matter of "local affairs," are "entitled to great weight." Madison Teachers, 358 Wis. 2d 1, ¶125 (citing Van Gilder, 222 Wis. at 73-74 (noting that "[e]ven though the determination made [by the Legislature] should be held not to be absolutely controlling, nevertheless, it is entitled to great weight")). Deference is proper because "matters of public policy are primarily for the legislature." Van Gilder, 222 Wis. at 73-74;[19] see also Flynn v. Dep't of Admin., 216 Wis. 2d 521, ¶24, 576 N.W.2d 245 (1988) ("This court has long held that it is the province of the legislature, not the court, to determine public policy" because as the "voice of the people," "[i]t is the best

---

[19] In full, Van Gilder states,

> The home-rule amendment does not lodge the power to determine what is a "local affair" or what is a "matter of state-wide concern' either with the municipality or with the legislature or attempt to define those terms. In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination. In the first instance, the determination of what is a "local affair" and what is a "matter of state-wide concern" would seem to be for the legislature for the reason that such a determination must involve large considerations of public policy. Even though the determination made by it should be held not to be absolutely controlling, nevertheless it is entitled to great weight because matters of public policy are primarily for the legislature.

222 Wis. at 73-74.

24

judge of what is necessary to meet the needs of the public . . . ."). While we give deference to a Legislature's determination, the ultimate decision "whether a legislative enactment is primarily a matter of local or statewide concern rests with this court and not the legislature." Madison Teachers, 359 Wis. 2d 1, ¶128.[20]

---

[20] Despite articulating an understanding of the rule that the Legislature's determination is entitled to great weight, the court of appeals chose to dismiss the Legislature's specific determination here:

> The argument that residency requirements are a matter of statewide concern simply because the legislature said so is not persuasive because it is unsubstantiated. Neither the Police Association nor the trial court point to any facts supporting this claim; the Police Association merely argues on appeal that the Legislature can do what it wants. We disagree. . . . In this case, we cannot conclude that "because the legislature said so" is reason enough to affirm the trial court when there are no facts to support such a conclusion. The facts in the record, exemplified by the Legislative Fiscal Bureau Paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee. Nearly every portion of the Legislative Fiscal Bureau paper's analysis explains in great detail how Milwaukee will be affected. The effect on the state, on the other hand, is never substantiated, and only given lip-service with broad policy arguments.

(continued)

¶31 In this case, we are being asked to weigh a statewide policy-based concern against a local economic interest. On the one hand, the Legislature, through its enactment of Wis. Stat. § 66.0502, has determined that public employees should have the right to choose where they wish to live. On the other hand, the City has asserted an interest in maintaining its residency requirement in order to protect its tax base, its interest in its employees sharing a common community investment as city residents, and its interest in its efficient delivery of services.[21]

¶32 Given the competing interests outlined above, we conclude that Wis. Stat. § 66.0502 constitutes a "mixed bag" because it concerns both statewide and local interests. At this point, we would ordinarily proceed to apply the test of paramountcy to determine whether the legislative enactment is "primarily" or "paramountly" a matter of local affairs or a

---

Black v. City of Milwaukee, 2015 WI App 60, ¶21, 364 Wis. 2d 626, 869 N.W.2d 522. Our cases discussing deference to legislative determinations of whether a matter is primarily of local or statewide concern under the home rule amendment have never required the Legislature to substantiate such determinations. See, e.g., Madison Teachers, 358 Wis. 2d 1, ¶¶125-128; Van Gilder, 222 Wis. at 73-74. The court of appeals was not bound by the Legislature's determination that "public employee residency requirements are a matter of statewide concern." However, the court of appeals should have at least attempted to follow the law it said it understood by giving great weight to that legislative determination.

[21] In its brief, the Police Association conceded that residency requirements at least partly involve matters of local concern.

matter of statewide concern. However, in this case, we do not apply the test of paramountcy to determine which interest (state or local) is paramount. Instead, we give the City the benefit of the doubt: we assume, without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs. Accordingly, we move on to consider the second step in the home rule analysis——whether Wis. Stat. § 66.0502 uniformly affects every city or village.

### 2. Whether Wis. Stat. § 66.0502 With Uniformity Affects Every City Or Village

¶33 We are instructed by our determination in Madison Teachers that if the statute concerns a matter of primarily local affairs, the reviewing court then examines whether the statute "with uniformity" "affects" "every city or every village." See 358 Wis. 2d 1, ¶101. This is not the first time we have examined the home rule amendment's uniformity requirement. We addressed the home rule amendment's uniformity requirement in Thompson v. Kenosha County, 64 Wis. 2d 673, 221 N.W.2d 845 (1974), and Van Gilder v. City of Madison, 222 Wis. 58, 267 N.W. 25 (1936). Both of these cases are constitutional home rule cases, interpreting and applying the same amendment we are currently interpreting and applying: Article XI, § 3(1) of the Wisconsin Constitution. With this precedent as our guide, we turn to the question of whether Wis. Stat. § 66.0502 affects with uniformity every city or village.

¶34 In Thompson, the Legislature passed Wis. Stat. § 70.99, which allowed any Wisconsin county to establish a county assessor system. 64 Wis. 2d at 676. The plaintiffs argued

27

that Wis. Stat. § 70.99 violated the home rule amendment. Under the statute, if a county chose to establish a county assessor system, then the office of assessor in all cities, villages, and towns within the county was eliminated. Id. Kenosha County chose to adopt a county assessor system; thus, the office of assessor was eliminated in all cities, villages, and towns within Kenosha County. Relying on the home rule amendment, the plaintiffs argued that Wis. Stat. § 70.99 did not uniformly affect all cities and villages because the cities and villages in Kenosha County had no office of assessor, while cities and villages located in counties that chose to forego adoption of a county assessor system had an office of assessor. Id. at 683. This court dismissed their argument, commenting,

> Sec. 70.99 is, on its face, uniformly applicable throughout the state. The legislature did not enact a statute which could only apply to Kenosha county, or as is often the case, Milwaukee county. Each county in the state has an equal right to decide to adopt a countywide assessor system. . . . Where a statute confers equal legal powers, that would seem sufficient to satisfy the uniformity requirement. Thus, for example, two cities may have identical powers, yet the respective city councils may enact entirely different sets of ordinances. The state could hardly be held to have violated the uniformity requirement in such a situation.

Id. at 687 (emphasis added). In short, since 1974 we have held that a statute satisfies the home rule amendment's uniformity requirement if it is, on its face, uniformly applicable to every city or village. Id.

28

¶35 We also considered the uniformity requirement in Van Gilder. There, we expressed skepticism toward the notion that a law could have a uniform impact on every city or village:

> Was it the intention of the people that the legislature should be without power to enact any law affecting a city of 2,500 people unless that law at the same time affected in the same way the City of Milwaukee, a metropolitan community having few if any interests akin to those of a small city of the fourth class? What was meant by uniformity? Was the law to be uniform in its application to the city of X with 2,500 population and affect it in the same way it affects the city of Milwaukee, a metropolitan community having a population of 600,000? In that sense there could hardly be a law affecting with uniformity every city. A law uniform in its application might work out one way in one city and in another way in another city depending upon the local situation and the way in which it was in fact administered and so "affect" them differently.

Van Gilder, 222 Wis. at 67 (emphasis added). We ultimately held, "[W]e can reach no other conclusion than that it was the intention of the people in the adoption of the [home rule] amendment to leave a large measure of control over municipal affairs with the legislature." Id. at 71. We went on, "To construe the amendment as meaning that every act of the legislature relating to cities is subject to a charter ordinance unless the act of the legislature affected with uniformity every city from smallest to the greatest, practically destroys legislative control over municipal affairs . . . ." Id. (emphasis added).

¶36 In sum, our precedent——going back to at least 1936——confirms that facial uniformity is sufficient to satisfy the

29

home rule amendment's uniformity requirement. As long as the statute, on its face, uniformly affects cities or villages throughout the State, the home rule amendment's uniformity requirement is satisfied.

¶37 The effect of the court of appeals' interpretation of uniformity is to ignore the holdings in Van Gilder and Thompson. That is, while Van Gilder and Thompson instruct that facial uniformity is sufficient, the court of appeals would hold that facial uniformity would "all but obliterate the home rule amendment." Black, 364 Wis. 2d 626, ¶32. The court of appeals misperceives the point of the home rule amendment. As stated previously, "The legislative power in this state is lodged in the legislature. When it exerts that power, it exerts it on behalf of and in the name of the people of the State of Wisconsin." Van Gilder, 222 Wis. at 67. The home rule amendment "confer[red] upon cities and villages a measure of self-government not theretofore possessed;" however, the amendment did so via "a grant of power to cities and villages," not via an "express limitation upon the power of the Legislature."[22]

---

[22] "In ascertaining the meaning of the home-rule amendment, we should also take into account the fact that the legislature was not hostile to a larger measure of local self-government by cities." Van Gilder, 222 Wis. 2d at 71. The Legislature was not adverse to the idea of cities having some control because, as noted by the Attorney General in the helpful amicus curiae brief prepared by the Solicitor General's office,

> At the time Wisconsin debated the Amendment, the problem of the day was the Legislature enacting city-specific legislation, addressing purely local issues, because cities lacked sufficient legal power to

(continued)

30

Baxter, 195 Wis. at 445. ("The [amendment] is a grant of power to cities and villages. . . . The phrase 'subject only to this constitution,' etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages.").

¶38 Thus, under the home rule amendment, a city or village "operates freed from legislative restriction" only in "a rather narrow field." Van Gilder, 222 Wis. at 80-81. We have explained,

> When the legislature deals with local affairs as distinguished from matters which are primarily of state-wide concern, it can only do so effectually by an act which affects with uniformity every city. It is true that this leaves a rather narrow field in which the home-rule amendment operates freed from legislative restriction, but there is no middle ground. Either the field within which the home-rule amendment operates must be narrowed or the field within which the legislature operates must be narrowed, and as was pointed out in the Baxter Case, the amendment clearly contemplates legislative regulation of municipal affairs and there was no intention on the part of the people in adopting the home rule amendment to create a state within a state, an imperium in imperio.

Id. at 80-81. When the Legislature wants to legislate on a matter of local affairs, it may do so if the law, on its face, uniformly affects every city or village.

¶39 In this case, the Legislature banned residency requirements throughout Wisconsin by enacting Wis. Stat. § 66.0502. We conclude that Wis. Stat. § 66.0502 (consistent

---

> regulate their own affairs. The Amendment sought to cure this problem by giving cities general law-making authority so the Legislature would no longer have to pass such laws.

31

with the home rule amendment) uniformly affects every city or village. We so conclude because the plain language of Wis. Stat. § 66.0502 demonstrates its uniform effect: Wis. Stat. § 66.0502 says that "no local governmental unit" may have a residency requirement, and it goes on to define "local governmental unit" to mean "any city, village, town, county, or school district" in the State. Wis. Stat. § 66.0502(2)-(3) (emphasis added).[23] Consequently, Wis. Stat. § 66.0502 uniformly bans residency requirements, and in so doing, it satisfies the home rule amendment's uniformity requirement.[24]

---

[23] Here, the Legislature ensured that Wis. Stat. § 66.0502 would with uniformity affect every city or village by making Wis. Stat. § 66.0502 apply to any city, village, town, county, or school district in the state. While the Legislature can preempt a city ordinance under the home rule amendment by making a statute apply to all cities or villages, it is no small decision to make a statute applicable to every city or village in the State. The Legislature must still make an important trade-off when it is considering whether it should legislate on a matter of local concern.

[24] In its petition for review, the Police Association raised two additional issues:

1. May a municipality disregard legislative prohibitions on certain conditions of municipal employment, by simply passing an ordinance disputing the legislature's policy determination and asserting [h]ome [r]ule authority to do so, without first seeking a declaration as to the rights and obligations of the parties?

2. Should a municipality be required to prove "beyond a reasonable doubt" that a statute is an unconstitutional overreach of its authority under the [h]ome [r]ule [a]mendment?

(continued)

32

## B. WHETHER THE POLICE ASSOCIATION IS ENTITLED TO RELIEF AND DAMAGES UNDER SECTION 1983

¶40 Finally, we address the Police Association's argument that it is entitled to relief and damages under 42 U.S.C. § 1983. "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[25] Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120-21 (1992). "Section 1983, by itself, does not create any substantive constitutional rights;" rather, it "provides a remedy for a deprivation of such rights." Penterman v. Wis. Elec. Power Co., 211 Wis. 2d 458, ¶22, 565 N.W.2d 521 (1997) (citing Chapman v. Houston Welfare Rights

---

We do not address these issues because they are not necessary to resolve this case. See State v. Cain, 2012 WI 68, ¶37 n.11, 342 Wis. 2d 1, 816 N.W.2d 177 ("[A]n appellate court should decide cases on the narrowest possible grounds." (quoting Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15)); see also Hull v. State Farm Mut. Auto Ins. Co., 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998) ("As a general rule, when our resolution of one issue disposes of a case, we will not address additional issues.").

[25] In full, section 1983 reads,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Org., 441 U.S. 600, 617-18 (1979)). Accordingly, in order to state a claim under section 1983, "a party must allege: (1) that a person acting under the color of state law committed the alleged conduct; and (2) that this conduct deprived the party of rights, privileges, or immunities protected by the Constitution or laws of the United States." Penterman, 211 Wis. 2d 458, ¶22.

¶41 The Police Association bases its section 1983 claim on an alleged denial of due process. The Due Process Clause of the Fourteenth Amendment "prohibits a state from depriving 'any person of life, liberty, or property without due process of law.'" Id., ¶39. Both this court and the Supreme Court of the United States recognize that three types of section 1983 claims may be brought against a state under the Due Process Clause:

> (1) Plaintiffs may bring suit under sec. 1983 for state officials' violations of their rights under a specific provision in the Bill of Rights; (2) The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions (these are commonly known as substantive due process rights); and (3) An action may be brought under sec. 1983 for a violation of procedural due process.

Casteel v. McCaughtry, 176 Wis. 2d 571, 578, 500 N.W.2d 277 (1993) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)). In other words, a person bringing a section 1983 claim under the Due Process Clause can base this claim on an alleged violation of a specific provision in the bill of rights, on an alleged violation of substantive due process, or on an alleged violation of procedural due process.

34

¶42 The Police Association makes no argument that its section 1983 claim is based on a specific provision in the Bill of Rights, nor does it argue a procedural due process violation; rather, throughout its briefing, it has referred exclusively to substantive due process. Accordingly, we turn to discuss whether the City violated the Police Association's substantive due process rights.

### 1. Whether The City Violated The Police Association's Substantive Due Process Rights

¶43 Substantive due process "protects individuals from 'certain arbitrary, wrongful actions regardless of the fairness of the procedures used to implement them.'" Penterman, 211 Wis. 2d 458, ¶39 (some quotation marks omitted) (quoting Zinermon, 494 U.S. at 125). "The test to determine if state conduct complained of violates substantive due process is if the conduct 'shocks the conscience . . . or interferes with rights implicit in the concept of ordered society.'" State ex rel. Greer, 353 Wis. 2d 307, ¶57 (quoting State v. Schulpius, 2006 WI 1, ¶33, 287 Wis. 2d 44, 707 N.W.2d 495). The Police Association argues both that the City's actions shock the conscience and that its actions interfere with a liberty interest. We address each argument in turn.

### i. Whether The City's Actions Shock The Conscience

¶44 Actions shock the conscience when they offend "even hardened sensibilities" or "the decencies of civilized conduct." Rochin v. California, 342 U.S. 165, 172-73 (1952); see also Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir.) ("[T]he 'shock

35

the conscience' standard requires a high level of outrageousness . . . ." (citing Collins, 503 U.S. at 128)); Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (describing acts that shock the conscience as "truly outrageous, uncivilized, and intolerable"). For example, in Rochin v. California, 342 U.S. 165 (1952), the case that first developed the shock the conscience test, police officers illegally broke into Rochin's home, jumped on him, handcuffed him, struggled to open his mouth, forced an emetic solution into his stomach, and made him vomit, so they could obtain evidence. 342 U.S. at 166. The Supreme Court of the United States held that these actions were "too close to the rack and the screw to permit . . . ." Id. at 172.

¶45 In the present case, the Common Council passed, and the Mayor signed, a resolution, which affirmed the section of its City charter requiring city employee residency. Relying on the home rule amendment, the resolution claimed that the City could still enforce its residency requirement because its charter (section 5.02) trumped the state statute (Wis. Stat. § 66.0502). Because the City believed its charter prevailed over

36

the state statute, the resolution stated that the City would continue to enforce its residency requirement.[26]

¶46 Simply stated, these actions do not "shock the conscience"——they do not offend "even hardened sensibilities" or "the decencies of civilized conduct." Here, we had a genuine legal dispute as to which law, Wis. Stat. § 66.0502 or section 5-02 of the City's charter, would prevail. The Common Council and the Mayor, by passing the resolution, merely provided the City's opinion that, pursuant to the home rule amendment, section 5-02 of the City's charter trumped Wis. Stat. § 66.0502. The City has not pointed to any case where factually similar conduct was held to shock the conscience. Therefore, we are not willing to conclude that a genuine legal dispute over the priority of two competing laws (one a statute and one a section of a city charter) rises to the level of conscience-shocking behavior.

### ii. Whether The City's Actions Deprived The Police Association Of A Fundamental Right Or Liberty

¶47 The Supreme Court of the United States "has always been reluctant to expand the concept of substantive due process

---

[26] In its brief, the Police Association applied the shocks the conscience test to both the Mayor's actions and the Common Council's actions: "Substantive due process is violated by executive action when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense," and "Substantive due process is violated by legislative action and can properly be recognized as arbitrary or conscience shocking, when its sweep is unnecessarily broad and invades a protected freedom." (quotation marks and citation omitted).

37

because guideposts for reasonable decision making in this unchartered area are scarce and open-ended." Collins, 503 U.S. at 126. This is because "[b]y extending constitutional protection to an asserted right or liberty interest, [the Court], to a great extent, place[s] the matter outside the arena of public debate and legislative action." Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Accordingly, "[t]he doctrine of judicial self-restraint requires [a court] to exercise the utmost care whenever [a court] [is] asked to break new ground in this field," Collins, 503 U.S. at 126, "lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the [m]embers of [a court]," Glucksberg, 521 U.S. at 720. In determining whether an asserted right falls within the purview of substantive due process, the Supreme Court has "regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" Id. (emphasis added) (quoting Moore v. City of East Cleveland, Oh., 431 U.S. 494, 503 (1977) (plurality opinion)).

¶48 Here, the Police Association has not asserted a fundamental right or liberty that is deeply rooted in this Nation's history and tradition. Rather, the Police Association claims that Wis. Stat. § 66.0502——on the day it was enacted—— created a liberty interest in being free from residency requirements as a condition of employment. To make this

38

argument, the Police Association pulls from procedural due process cases.

¶49 For example, the Police Association relies on Hewitt v. Helms, 459 U.S. 460 (1983) for the proposition that a liberty interest may arise from two sources: the Due Process Clause or the laws of a state. 459 U.S. at 466. In Hewitt, the Supreme Court of the United States ultimately concluded that the "statutory framework governing the administration of state prisons gave rise to a liberty interest . . . , but . . . the procedures afforded [the] respondent were 'due process' under the Fourteenth Amendment." Id. (emphasis added). Throughout its opinion, the Court made reference to the state regulation giving rise to procedural due process protections: "procedural guidelines," "procedural rights," "procedural requirements," and "procedural safeguards." Id. at 471, 472, 473, 475. There, the "Due Process Clause require[d] only an informal nonadversary review of evidence . . . in order to confine an inmate feared to be a threat to institutional security to administrative segregation." Id. at 474 (emphasis added).

¶50 We recognize that the Supreme Court, in cases like Hewitt, has "repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." Vitek v. Jones, 445 U.S. 480, 488 (1980) (emphasis added). However, the "Supreme Court has never held that such state-created interests constitute a fundamental liberty interest protected under a substantive due process theory.

39

Rather, the Court has analyzed state-created liberties under a _procedural_ due process theory." Krausharr v. Flanigan, 45 F.3d 1040, 1047 (7th Cir. 1995) (emphasis added); see also Robinson v. Howell, 902 F. Supp. 836, 843 (S.D. Ind. 1995) ("A state cannot legislate or otherwise determine what constitutes a fundamental principle of justice and liberty so as to be worthy of protection under the federal constitution."). The Police Association has not pointed to any contrary authority. Because "[t]he doctrine of judicial restraint requires [a court] to exercise the utmost care" when determining whether a substantive due process right exists, we decline to create a new right or liberty interest in being free from residency requirements as a condition of employment. See Collins, 503 U.S. at 126. As a result, we conclude that the Police Association's substantive due process argument fails. Because the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or laws of the United States, it is not entitled to relief or damages under section 1983.[27]

---

[27] The Police Association appears to argue (1) that the City's resolution deprived it of a non-fundamental liberty interest in being free from a residency requirement and (2) that this deprivation does not survive rational basis review. Even assuming that the first of these arguments is valid (which we do not decide), the resolution survives rational basis review. The resolution was rationally related to the City's legitimate interest in expressing its opinion on whether, pursuant to the home rule amendment, section 5-02 of the City's charter trumped Wis. Stat. § 66.0502.

IV. CONCLUSION

¶51 To summarize, first, we hold that Wis. Stat. § 66.0502 precludes the City from enforcing its residency requirement. The Legislature has the power to legislate on matters of local affairs when its enactment uniformly affects every city or every village, notwithstanding the home rule amendment. For purposes of the home rule amendment, an enactment is uniform when it is facially uniform. Wisconsin Stat. § 66.0502 is facially uniform because it applies to "<u>any</u> city, village, town, county, or school district." Wis. Stat. § 66.0502 (2) (emphasis added). Because Wis. Stat. § 66.0502 uniformly affects every city or village, it trumps section 5-02 of the City's charter. Milwaukee may no longer enforce its residency requirement. Second, we hold that the Police Association is not entitled to relief or damages under 42 U.S.C. § 1983. Its section 1983 claim fails because the Police Association has not met the requirements necessary to prevail on a section 1983 claim. Specifically, the Police Association has not shown a deprivation of rights, privileges, or immunities protected by the Constitution or laws of the United States.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶52 REBECCA G. BRADLEY, J. *(concurring).* I agree that Wis. Stat. § 66.0502 trumps Milwaukee's residency ordinance and therefore I join the majority opinion. I write separately to point out that the original meaning of the home rule amendment to the Wisconsin Constitution decrees a different interpretation than this court gives. The home rule amendment provides that: "Cities and villages . . . may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. . . ." Wis. Const. art. XI, § 3(1). The majority holds that the statute controls over any conflicting city charter ordinance "<u>either</u> (1) when the enactment addresses a matter of statewide concern, <u>or</u> (2) when the enactment with uniformity affects every city or village." Majority op., ¶26.

¶53 I cannot agree with this interpretation based on the text of the home rule amendment and its original meaning. After examining the constitutional debates and practices surrounding the amendment's adoption, I conclude that a legislative enactment preempts a conflicting city charter ordinance under the home rule amendment only when the enactment <u>both</u> concerns a matter of statewide concern <u>and</u> with uniformity affects every city or village. <u>See</u> Wis. Const. art. XI, § 3(1). Here, Wis. Stat. § 66.0502 meets both the statewide concern and uniformity requirements; therefore, § 66.0502 prevails over the City of Milwaukee's residency requirement found in section 5-02 of the

1

City's charter. As a result, although I disagree with the majority's interpretation and application of the home rule amendment, I agree with the end result: Wis. Stat. § 66.0502 precludes the City of Milwaukee from enforcing its residency requirement.

I. INTERPRETATION OF THE HOME RULE AMENDMENT

¶54 The methodology used to interpret amendments to the Wisconsin Constitution is well established. See, e.g., Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶19, 295 Wis. 2d 1, 719 N.W.2d 408; id., ¶¶114-17 (Prosser, J., concurring in part, dissenting in part); Thompson v. Craney, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996). We independently interpret the Wisconsin Constitution,[1] "to give effect to the intent of the framers and of the people who adopted it; and it is a rule of construction applicable to all constitutions that they are to be construed so as to promote the objects for which they were framed and adopted." State v. Cole, 2003 WI 112, ¶10, 264 Wis. 2d 520, 665 N.W.2d 328 (quotation marks and citations omitted). We may look to "three primary sources in determining the meaning of a constitutional provision: [1] the plain meaning, [2] the constitutional debates and practices of the time, and [3] the earliest interpretations of the provision by the legislature, as manifested through the first legislative action following adoption." Dairyland Greyhound Park, 295 Wis.

---

[1] Thompson v. Craney, 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996).

2

2d 1, ¶19.[2]  A focus on the first two sources shows the text of the home rule amendment authorizes cities and villages to "determine their local affairs and government" subject only to the Wisconsin Constitution and a legislative enactment <u>both</u> addressing a statewide concern <u>and</u> with uniformity affecting every city or every village.  <u>See</u> Wis. Const. art. XI, § 3(1). I give priority to the plain meaning of the words of the home rule amendment.  <u>See</u> <u>Dairyland Greyhound Park</u>, 295 Wis. 2d 1, ¶117 (Prosser, J., concurring in part, dissenting in part).

### A. Plain meaning

¶55  To understand the original meaning of the home rule amendment, I begin with the text of the amendment.  The home rule amendment provides, in pertinent part: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."  Wis.

---

[2] I do not address legislative interpretations to determine the meaning of the home rule amendment because

> In the performance of assigned constitutional duties each branch of the Government must initially interpret the Constitution, and the interpretation of its powers by any branch is due great respect from the others. . . . Many decisions of this Court, however, have unequivocally reaffirmed the holding of <u>Marbury v. Madison</u> that '(i)t is emphatically the province and duty of the judicial department to say what the law is.'

<u>United States v. Nixon</u>, 418 U.S. 683, 703 (1974)(quoting <u>Marbury v. Madison</u>, 5 U.S. 137, 177, 1 Cranch 137, 2 L.Ed. 60 (1803))(internal citation omitted).

3

Const. art. XI, § 3(1). The structure of this sentence reveals the meaning of the home rule amendment. The first clause provides: "Cities and villages organized pursuant to state law may determine their local affairs and government." See id. This independent clause grants power to cities and villages to govern "their local affairs and government." See id. The second clause, a dependent clause, modifies the preceding independent clause and places two limitations on the grant of power to cities and villages. First, the constitution may limit city or village authority to determine its local affairs. The second limitation subordinates the power of cities and villages to: "such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village." See id. This second limitation contains two requirements evidenced by its grammatical construction.[3] The subject of this limitation is "enactments of the legislature," while the verb is "shall affect." The phrase "of statewide concern" specifies the type of enactments that supersede local governance, and the phrase "as with uniformity" specifies how those enactments "shall affect" every city or every village. Because one phrase modifies the subject and the other phrase modifies the verb, both modifiers are necessary, rather than unilaterally sufficient requirements. In other words, the text of the home rule amendment authorizes cities and villages to "determine

---

[3] "Words are to be given the meaning that proper grammar and usage would assign them." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012).

4

their local affairs and government" subject only to the Wisconsin Constitution and a legislative enactment both addressing a statewide concern and with uniformity affecting every city or every village. The "subject to" phrase accords priority[4] over local governance to both the constitution and enactments of the legislature of statewide concern, provided the uniformity requirement is met. In the event of conflict between a local enactment and either the constitution or an enactment of the legislature (1) where the subject matter is of statewide concern and (2) that applies with uniformity to every city and village, the local enactment must give way. The text of the home rule amendment cannot be reasonably or grammatically read in any other way.

¶56 Much of this court's precedent, including our recent decision in Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶101, 358 Wis. 2d 1, 851 N.W.2d 337, fails to apply the plain meaning of the home rule amendment. Nevertheless, the majority relies entirely upon the home rule framework set forth in Madison Teachers without any attempt to explain how the text of the amendment supports that framework. The majority states:

> [O]ur home rule case law instructs us that, when reviewing a legislative enactment under the home rule amendment, we apply a two-step analysis. First, as a threshold matter, the court determines whether the statute concerns a matter of primarily statewide or primarily local concern. If the statute concerns a matter of primarily statewide interest, the home rule amendment is not implicated and our analysis ends. If, however, the statute concerns a matter of

---

[4] Id. at 127.

5

> primarily local affairs, the reviewing court then examines whether the statute satisfies the uniformity requirement. If the statute does not, it violates the home rule amendment.

Majority op., ¶25 (quoting Madison Teachers, 358 Wis. 2d 1, ¶101) (emphasis added). To conclude as the majority does, that analysis of the home rule amendment stops if the legislative enactment at issue addresses an issue primarily of statewide concern and that the uniformity requirement applies only to legislation concerning issues primarily of local concern, simply does not comport with the text of the amendment.

¶57 As emphasized above, Madison Teachers did not purport to rely on the text of the home rule amendment to craft the analytical framework employed by the majority opinion here. Instead, Madison Teachers relied on case law concerning the home rule amendment dating back to 1926. Id., ¶¶96-101, 117 (citing State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 640, 209 N.W. 860 (1926)). The problem with Madison Teachers' reliance on precedent and in turn the majority opinion's employment of the analytical framework from Madison Teachers is that no prior case reconciles the text of the home rule amendment with this judicially-created analytical framework.[5]

---

[5] See, e.g., Thompson v. Kenosha Cty., 64 Wis. 2d 673, 221 N.W.2d 845 (1974); Van Gilder v. City of Madison, 222 Wis. 58, 267 N.W. 25 (1936); State ex rel. Sleeman v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928); State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 209 N.W. 860 (1926); State ex rel. Harbach v. City of Milwaukee, 189 Wis. 84, 86, 206 N.W. 210 (1925).

¶58 Where even long-standing precedent contravenes the constitution, it is ripe for reconsideration.

> "Stare decisis is not . . . a universal, inexorable command," especially in cases involving the interpretation of the Federal Constitution. Erroneous decisions in such constitutional cases are uniquely durable, because correction through legislative action, save for constitutional amendment, is impossible. It is therefore our duty to reconsider constitutional interpretations that "depar[t] from a proper understanding" of the Constitution.

Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 954-55 (1992)(Rehnquist, C.J., concurring in part, dissenting in part)(alteration in original)(internal citations omitted). "The principle of stare decisis does not compel us to adhere to erroneous precedents or refuse to correct our own mistakes." State v. Outagamie Cty. Bd. of Adjustment, 2001 WI 78, ¶31, 244 Wis. 2d 613, 628 N.W.2d 376. "Our constitutional watch does not cease merely because we have spoken before on an issue; when it becomes clear that a prior constitutional interpretation is unsound we are obliged to reexamine the question." Casey, 505 U.S. at 955 (Rehnquist, C.J., concurring in part, dissenting in part). The durability of erroneous decisions interpreting the home rule amendment under the Wisconsin Constitution illustrates the danger of rigidly adhering to the doctrine of stare decisis at the expense of fidelity to the constitution. It is this court's duty to reconsider interpretations of the home rule amendment that depart from a proper understanding of that constitutional provision. This court should be "ready at all times to subordinate any possible, though unjustifiable, pride

7

of opinion to a justifiable pride in trying to decide rightly." Ekern, 190 Wis. at 635.

### B. Constitutional debates and practices

¶59 The plain meaning interpretation of the home rule amendment explained above finds support in the historical context in which the home rule amendment was adopted, including relevant statements made by the framers of the amendment as well as public statements made by proponents of the amendment who communicated the meaning of the amendment to voters. Understanding the context in which the home rule amendment was proposed and ratified is essential because "[t]he meaning of the constitutional provision having been once firmly established as of the time of its adoption, such meaning continues forever, unless it is changed or modified by the Constitution." State ex rel. Bare v. Schinz, 194 Wis. 397, 403, 216 N.W. 509 (1927). Unlike statutory interpretation where consultation of extrinsic sources is typically limited to resolving ambiguities,[6] examination of constitutional debates and historical practices from extrinsic sources is necessary in constitutional interpretation to ascertain original meaning:

> The reasons we employ a different methodology for constitutional interpretation are evident. Constitutional provisions do not become law until they are approved by the people. Voters do not have the same access to the "words" of a provision as the legislators who framed those words; and most voters are not familiar with the debates in the legislature. As a result, voters necessarily consider second-hand

---

[6] State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶50, 271 Wis. 2d 633, 681 N.W.2d 110.

> explanations and discussion at the time of ratification. In addition, the meaning of words may evolve over time, obscuring the original meaning or purpose of a provision. The original meaning of a provision might be lost if courts could not resort to extrinsic sources. Finally, interpreting a constitutional provision is likely to have a more lasting effect than the interpretation of a statute, inasmuch as statutory language can be more easily changed than constitutional language. Thus, it is vital for court decisions to capture accurately the essence of a constitutional provision.

Dairyland Greyhound Park, 295 Wis. 2d 1, ¶116 (Prosser, J., concurring in part, dissenting in part). Consultation of the contemporaneous writings of the framer of a constitutional amendment may aid in ascertaining original meaning "not because they were Framers and therefore their intent is authoritative and must be the law; but rather because their writings, like those of other intelligent and informed people of the time, display how the text of the Constitution was originally understood." Antonin Scalia, A Matter of Interpretation 38 (Amy Gutmann ed., 1997).

¶60 Accordingly, it is first essential to understand the context in which the home rule amendment was drafted and proposed. The home rule amendment arose as a direct result of this court's decision in State ex rel. Mueller v. Thompson, 149 Wis. 488, 137 N.W. 20 (1912).[7] In Mueller, this court invalidated a 1911 statute, known as the "home rule act," which authorized cities to amend their city charters. Id. at 490, 493-94, 497. The "home rule act" at issue in Mueller provided:

_____

[7] Daniel W. Hoan, Brief for Wisconsin League of Municipalities as Amicus Curiae at 2 (No. 252) in State ex rel. Sleeman v. Baxter, 195 Wis. 437, 219 N.W. 858 (1928).

9

"Every city, in addition to the powers now possessed, is hereby given authority to alter or amend its charter, or to adopt a new charter by convention, in the manner provided in this act, and for that purpose is hereby granted and declared to have all powers in relation to the form of its government, and to the conduct of its municipal affairs not in contravention of or withheld by the constitution or laws, operative generally throughout the state."

Id. at 493-94. Operating under the "home rule act," the City of Milwaukee's Common Council adopted a resolution to amend its charter to allow the City to operate an ice plant. Id. at 498-99 (Timlin, J., concurring). After the resolution passed, the City Clerk refused to place the proposed amendment of the City's charter on the ballot. Id. at 489. The State pursued a mandamus action against the City Clerk that the circuit court granted. Id. at 489. This court reversed and held that the City Clerk had no duty to place the proposed amendment to the City's charter on the ballot because the "home rule act" that granted the authority to cities to amend their charters was an unconstitutional delegation of legislative power. Id. at 491-92, 497. The court then alluded to the possibility of a home rule amendment to our constitution:

It is correctly claimed on the one side, and not effectually, if at all, denied upon the other, that in most cases where legislation of the nature of that in question has been adopted it was preceded by a constitutional amendment expressly authorizing it, while in those not so preceded the legislation was condemned as unconstitutional.

Id. at 497-98.

¶61 Following the invalidation of the "home rule act" in Mueller, work on a home rule amendment culminated in a joint resolution "[t]o amend section 3 of article XI of the

10

constitution, relating to powers of cities and villages"[8] that passed both houses in 1921 and 1923 and was set for the 1924 general election. Wisconsin Legislative Reference Bureau, State of Wisconsin Blue Book 219 (2015-16). A joint resolution set forth the amendment, in pertinent part:

> Resolved by the senate, the assembly concurring, That section 3 of article XI of the constitution be amended to read: (Article XI) Section 3: Cities and villages organized pursuant to state law It shall be the duty of the legislature, and they are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature. to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations.

Jt. Res. 18-S (Wis. 1923)(italics and internal quotation marks omitted).[9]

¶62 Not only was the home rule amendment an outgrowth of our decision in Mueller, but the attorney who represented the City Clerk in that case, Daniel W. Hoan, was a primary drafter of the home rule amendment. See Daniel W. Hoan, Brief for Wisconsin League of Municipalities as Amicus Curiae at 2 (No. 252) in Baxter, 195 Wis. 437. Hoan, who served as mayor of

---

[8] Jt. Res. 39-S (Wis. 1921); Jt. Res. 34 (Wis. 1923).

[9] A subsequent change in the home rule amendment from "are hereby empowered, to" to "may" is not pertinent to my analysis.

11

Milwaukee from 1916-1940,[10] filed an amicus brief on behalf of the League of Municipalities in Baxter, in which he set forth a detailed account of his intent in drafting the home rule amendment. Id. Hoan first explained in his amicus brief in Baxter that he "drafted this Home Rule Amendment to overcome the difficulties pointed out in [Mueller]" and that he presented the amendment's wording and meaning to city attorneys around the state and to legislative committee members and that during those presentations "no other interpretation of this amendment was there offered except as outlined in this brief." Id. at 2-3. He then explained that he determined that striking certain language from Article XI, Section 3, pertaining to legislative authority, to create the grant of authority to cities and villages, rather than adding a new section to the constitution, would provide greater clarity as to the purpose and meaning of the home rule amendment. Id. at 8. He stated that the home rule amendment makes "certain that cities and villages shall have a grant of power to determine their local affairs and government." Id. at 12-13. To ensure that cities and villages received this authority under the home rule amendment, the amendment contains only two limitations on local power: "'subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village.'" Id. at 13 (quoting Wis. Const. art. XI, § 3(1)). Hoan explains:

---

[10] Edward S. Kerstein, Milwaukee's All-American Mayor: Portrait of Daniel Webster Hoan 82, 178 (1966).

12

> We ask the court to particularly take note of the words "only" and "uniformity." We ask the court likewise to note carefully the wording of this clause as leaving no doubt that all parts of it are descriptive of the type of legislative act that the local power is subject to. We submit that this wording is not ambiguous as other constitutional Home Rule amendments may be. It does not say——subject to state laws, subject to state laws of state-wide concern, or subject to laws uniformly affecting cities, but it does say——subject *only* to such state laws as are therein defined, and these laws must meet two tests: First——do they involve a subject of state-wide concern, and second——do they with uniformity affect every city or village?

Id. at 13-14 (emphasis added) (italics in original). There could not be a clearer confirmation of the original meaning of the home rule amendment than this. The person who drafted the home rule amendment specifically clarified that a legislative enactment must both involve a matter of statewide concern and with uniformity affect every city or every village.

¶63 In addition to the framer's interpretation of the home rule amendment, between 1919 and 1924, newspapers from across the state published content addressing the need for a home rule amendment and providing voters with information regarding the meaning of home rule amendment. For example, in 1919, Hoan, who was then Mayor of Milwaukee, wrote a letter to the editor in support of the home rule amendment, which had recently failed to pass the Senate by a single vote. Daniel W. Hoan, Letter to the Editor, Voice of the People, The Capital Times, Apr. 22, 1919, at 4. Mayor Hoan's letter strongly advocated for the passage of the home rule amendment to address the problem of the legislature having to review numerous proposed bills dealing with purely local matters. Id. He stated: "At this time when

13

everyone in the legislature is crying out about the long session, why should we continue a system which piles up hundreds of bills affecting cities to be considered by that body." Id.

¶64 The sentiment that a home rule amendment was necessary to not only free the legislature from addressing purely local matters, but also to grant authority to cities and villages to adopt amendments to their own charters to deal with such matters was repeated in several newspaper articles. In 1921, The Capital Times reported:

> While the amendment was broad in its application covering other cities of the state, the principle purpose of passing it was to aid Milwaukee. It is estimated that over 25 percent of the measures before the Wisconsin legislature directly affecting Milwaukee and a home rule [] could be passed upon locally if home rule were in force.

Home Rule Amendment Is Nullified, The Capital Times, Jan. 27, 1921, at 1. Similarly, the Oshkosh Daily Northwestern reported that according to Mayor Hoan, "City legislation of only local interest takes up at least a month of the legislature's time each session." Income Tax Bills Posted for Hearing, Oshkosh Daily Northwestern, Mar. 2, 1921, at 11. The Appleton Post-Crescent stated "one-third of state legislation has to do with matters pertaining to municipalities and state legislators have not the training and experience to deal efficiently with mere local problems." Home Rule Bill is Indorsed By City Officers, Appleton Post-Crescent, June 8, 1922, at 1. Newspapers cited examples of these problematic bills concerning purely local matters, which under the home rule amendment could be dealt with locally by cities and villages. For example, one recently

14

enacted bill allowed a city office to install a telephone. Joseph P. Harris, Questions and Answers, The Capital Times, Jan. 19, 1924, at 9. Another recently introduced bill called for the insertion of a comma in one City's charter, which would clarify whether the mayor had the authority to veto a resolution. Henry Noll, Home Rule Law Big Step Ahead, Urges M'Gregor, Wisconsin State Journal, July 20, 1924.

¶65 Along with the need for the home rule amendment, newspaper content also confirms the preservation of state legislative power over cities and villages, which was communicated to voters prior to the 1924 general election. Mayor Hoan explained: "The state will not lose its power over cities . . . for it can prohibit them from doing anything by making state wide application to all measures passed. Cities will be given a free hand in local affairs, without becoming free from state legislation . . . ." Income Tax Bills Posted for Hearing, Oshkosh Daily Northwestern, Mar. 2, 1921, at 11 (emphasis added). In a question and answer column that appeared in The Capital Times, political science Professor Joseph P. Harris explained that "Home rule secures to cities and villages a larger share in the control over matters of purely local concern." Joseph P. Harris, Questions and Answers, The Capital Times, Jan. 19, 1924, at 9. The Secretary of the Wisconsin League of Municipalities, Ford H. MacGregor, stated "'The home rule amendment is intended to give cities and villages greater powers of local self-government. . . . The amendment will give municipalities of the state power to draft and adopt amendments

15

to their own charters without having to go to the legislature to get the general charters law amended.'" Cities are Urged to Favor 'Home Rule,' Manitowoc Herald-Times, July 3, 1924, at 3. In a Wisconsin State Journal article, MacGreger also corroborates the priority accorded to state legislative enactments of general applicability to all cities and villages under the home rule amendment:

> While this home rule amendment gives cities and villages greater power of local self-government, it in no way ties the hands of the state legislature in matters of state-wide concern . . . . It does prevent the legislature from interfering in purely local affairs but it does not prevent the state from passing any law in which the state as a whole is interested. Any general law relative to public health, education, the regulation of public utilities, the police power, fire protection, or any other subject of state-wide interest may be enacted by the legislature anytime provided it applies to all cities or villages. Of course, any home rule charter conflicting with any of these general laws would be void.

Henry Noll, Home Rule Law Big Step Ahead, Urges M'Gregor, Wisconsin State Journal, July 20, 1924. (emphasis added).

¶66 Newspaper articles leading up to the 1924 general election reveal that proponents of the home rule amendment communicated two main points about the amendment to voters. First, the home rule amendment was necessary to grant authority to cities and villages to address matters of purely local concern, which in turn would free the legislature from the burden of considering large volumes of proposed legislation relating to purely local concerns. Second, the home rule amendment would expand authority to cities and villages, but would not limit legislative authority over statewide matters as

16

long as the legislation relating to a statewide matter was with uniformity applied to all cities and villages. The original meaning of the home rule amendment communicated to the voters who ratified the amendment, along with the interpretation detailed by the drafter of the amendment, reinforce the plain meaning analysis above and collectively support the interpretation that a legislative enactment prevails over a conflicting city charter ordinance under the home rule amendment when the enactment both concerns a matter of statewide concern and affects every city or village with uniformity. Here, Wis. Stat. § 66.0502 meets both requirements.

## II. WISCONSIN STAT. § 66.0502

¶67 As the majority opinion describes, Wis. Stat. § 66.0502 "prohibits cities, villages, towns, counties, and school districts from requiring their employees to reside within their jurisdictional limits." Majority op., ¶3 (footnote omitted). Section 66.0502 conflicts with the City of Milwaukee's residency requirement found in section 5-02 of the City's charter. Id. Under the original meaning of the home rule amendment, to prevail over the City's residency requirement, § 66.0502 must both (1) address a statewide concern and (2) with uniformity affect every city or every village.

### A. Statewide concern requirement

¶68 In determining whether a legislative enactment pertains to a local or a statewide concern,

> our court has outlined three areas of legislative enactment: (1) Those that are "exclusively of state-wide concern;" (2) those that "may be fairly classified as entirely of local character;" and (3)

17

> those which "it is not possible to fit . . .
> exclusively into one or the other of these two
> categories."

State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 526-27, 253 N.W.2d 505 (1977) (footnotes omitted). As for this third category, referred to as a "mixed bag," courts have applied "the test of paramountcy" to determine whether "a challenged legislative enactment, state or local, possessing aspects of 'state-wide concern' and of 'local affairs,' is primarily or paramountly a matter of 'local affairs and government' under the home rule amendment or of 'state-wide concern . . . .'" Id. at 527-28.

¶69 However, applying the original meaning of the home rule amendment eliminates any need for the "test of paramountcy"——a judicial creation conspicuously absent from the text of the constitution. This is because the purpose of the home rule amendment, as discussed in Part I, was to empower cities and villages to address matters of purely local concern rather than require legislative action to resolve these matters. When a legislative enactment involves any degree of statewide concern, it will not violate the home rule amendment so long as the enactment with uniformity affects every city or every village.

¶70 Here, Wis. Stat. § 66.0502 involves matters of statewide concern; therefore it does not address concerns that are purely local. First, § 66.0502(1) provides: "The legislature finds that public employee residency requirements are a matter of statewide concern." This legislative public policy statement must be given great weight even though the

18

court must make the ultimate determination. Madison Teachers, 358 Wis. 2d 1, ¶¶125, 128; Van Gilder, 222 Wis. at 73-74. Second, the legislature's decision to apply § 66.0502 to all "local governmental units" meaning "any city, village, town, county, or school district" indicates that the legislative enactment involves issues of statewide concern.[11] See Wis. Stat. § 66.0502(2)-(3). Finally, the prohibition on residency requirements under § 66.0502 addresses issues of public welfare, the free movement of citizens, and the recruitment of workers——all matters of statewide concern. In sum, because Wis. Stat. § 66.0502 addresses issues of statewide concern, it cannot be categorized as a legislative enactment addressing a purely local concern.

## B. Uniformity requirement

¶71 As referenced above, Wis. Stat. § 66.0502 applies to any "city, village, town, county, or school district," and therefore, on its face, is uniform. Majority op., ¶36. Accordingly, I agree with the majority that § 66.0502 satisfies the uniformity requirement of the home rule amendment. See majority op., ¶¶34-39.

## III. CONCLUSION

---

[11] This idea was contemplated by the drafter of the home rule amendment, who stated: "For example, if the legislature passes a bill uniformly affecting all cities . . . the fact that the legislature acted creates an assumption in legal minds that the subject matter must be of state-wide concern. See Daniel W. Hoan, Brief for the Wisconsin League of Municipalities as Amicus Curiae at 19 (No. 252) in Baxter, 195 Wis. 437.

19

¶72 Under the home rule amendment, a legislative enactment prevails over a conflicting city charter ordinance when the enactment <u>both</u> concerns a matter of statewide concern <u>and</u> with uniformity affects every city or village. <u>See</u> Wis. Const. art. XI, § 3(1). This interpretation is based on the plain meaning of the home rule amendment as reflected in the history of the amendment and the constitutional debates and practices at the time the amendment was adopted. Here, Wis. Stat. § 66.0502 meets both the statewide concern and the uniformity requirements.

¶73 Although I disagree with the majority's interpretation of the home rule amendment, I agree that Wis. Stat. § 66.0502 precludes the City of Milwaukee from enforcing its residency requirement. Accordingly, I respectfully concur.

¶74 ANN WALSH BRADLEY, J. *(concurring and dissenting).* I agree with the majority that the Police Association is not entitled to relief or damages. Majority op., ¶8. Likewise, I agree that the purpose of the Home Rule Amendment is to grant power and self-governance to cities and villages, providing them with greater autonomy over local affairs. Majority op., ¶2.

¶75 I write separately, however, because the majority turns that purpose on its head. Instead of freeing municipalities from interference by the legislature when dealing with local affairs, the majority limits the power and restrains the ability of municipalities to self-govern.

¶76 In reaching its conclusion that Wis. Stat. § 66.0502 precludes the city of Milwaukee from enforcing its residency requirement, the majority grants extensive power to the legislature to interfere with matters that relate exclusively to the local affairs of Wisconsin's cities and villages. It does this by contravening the well-recognized purpose of the Home Rule Amendment, ignoring the evidentiary record, and creating a heretofore unknown facial uniformity rule.

¶77 Contrary to the majority, I conclude that the city of Milwaukee may enforce its residency requirement under the powers granted to local municipalities by the Wisconsin Constitution's Home Rule Amendment. I would therefore affirm the court of appeals' determination that Wis. Const. art. XI, § 3(1) precludes application of Wis. Stat. § 66.0502 to Milwaukee's Charter Ordinance 5-02. Accordingly, I respectfully dissent.

1

I.

¶78 At issue here is whether the Wisconsin Constitution's Home Rule Amendment grants Milwaukee, through its charter ordinance, the power to enforce its local residency requirement despite the legislative enactment of Wis. Stat. § 66.0502.

¶79 Municipalities may exercise constitutional home rule authority by charter ordinance.[1] Wis. Stat. § 66.0101. The home rule constitutional amendment, Wis. Const. art. XI § 3(1), provides that "[c]ities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village."

¶80 For over 75 years, pursuant to a charter ordinance, Milwaukee has required its employees to live within the city where they work.[2] Under its constitutional home rule authority, Section 5-02(1) of Milwaukee's City Charter requires all employees "to establish and maintain their actual bona fide residence within the boundaries of the city." Milwaukee asserts that its Charter Ordinance 5-02 has a number of local economic and societal benefits, such as protecting its tax base, housing values and local commerce, as well as improved safety through community policing and rapid response times in emergencies.

_____

[1] Wis. Stat. 66.0101 includes a detailed, time-consuming procedure for municipalities to enact a charter ordinance that overrides a state law as it relates to the local affairs and government of the city or village.

[2] See Milwaukee Charter 5-02.

2

¶81 However, in 2013 the Wisconsin legislature enacted Wis. Stat. § 66.0502, which abolished all local residency requirements in the State of Wisconsin. The new statute provides that "no local government unit may require, as a condition of employment, that any employee or prospective employee reside within any jurisdictional unit." Wis. Stat. § 66.0502(3)(a).

¶82 The legislative history of Wis. Stat. § 66.0502 demonstrates that the statute's aim was to eliminate Milwaukee's residency requirement. As the court of appeals explained, "[t]he facts in the record, exemplified by the Legislative Fiscal Bureau paper, make clear that the goal of Wis. Stat. § 66.0502 was to target the City of Milwaukee." Black v. City of Milwaukee, 2015 WI App 60, ¶21, 364 Wis. 2d 626, 869 N.W.2d 522.

¶83 Wisconsin municipalities have two distinct sources of home rule authority——constitutional and statutory. Constitutional home rule is expansive and statutory home rule is limited. Contrary to "the direct and expansive delegation of power to municipalities under Wis. Const. art. XI, section 3," statutory home rule authority is limited. State ex rel. Teunas v. Kenosha County, 142 Wis. 2d 498, 504, 418 N.W.2d 833 (1988).

¶84 Only cities and villages are granted constitutional home rule authority. Other units of local government, such as counties, towns and school districts, have administrative home rule authority pursuant to statute. See, e.g., Wis. Stat.

3

§ 59.03.[3]   A county's statutory home rule authority is limited. Teunas, 142 Wis. 2d at 504 ("a county board has only such powers as are expressly conferred upon it or necessarily implied from the powers expressly given or from the nature of the grant of power.").

¶85  Milwaukee's residency requirement was enacted under "the direct and expansive delegation of power to municipalities under Wis. Const. art. XI, section 3." See id.  However, in reaching its conclusion that Wis. Stat. § 66.0502 precludes the city of Milwaukee from enforcing its residency requirement, the majority restricts the constitutional mandate and instead grants expansive power to the legislature to govern matters that relate exclusively to the local affairs of Wisconsin's cities and villages.

II.

¶86  The majority purports to follow the two-step analysis of the Home Rule Amendment set forth in Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶101, 358 Wis. 2d 1, 851 N.W.2d 337.  In applying the first step, it explains that this court has outlined "three areas of legislative enactment:  those that are (1) exclusively a statewide concern; (2) exclusively a local concern; or (3) a 'mixed bag.'"  Majority op., ¶29 (citing Madison Teachers, 358 Wis. 2d 1, ¶96).

---

[3] Wis. Stat. § 59.03(1) provides that "[e]very county may exercise any organizational or administrative power, subject only to the constitution and to any enactment of the legislature which is of statewide concern and which uniformly affects every county."

4

¶87 Although the majority summarizes the parties' positions and identifies their interests, it reaches its initial conclusion without any analysis whatsoever of the law or the facts of record. Initially, the majority concludes that Wis. Stat. § 66.0502 is a "mixed bag." It acknowledges that this court should then apply the test of paramountcy to determine whether the legislative enactment is "primarily" or "paramountly" a matter of local affairs or a matter of statewide concern." Majority op., ¶32.

¶88 Remarkably, the majority declines to apply the test of paramountcy and again, without any analysis whatsoever, ultimately arrives at a contrary conclusion. It "assume[s], without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs." Majority op., ¶32.

¶89 In applying the second step of the analysis, the majority contends that "[f]or purposes of the home rule amendment, an enactment is uniform when it is facially uniform." Majority op., ¶7. Without any consideration of how the legislative enactment "with uniformity shall affect," the majority summarily concludes that Wis. Stat. § 66.0502 is facially uniform because the text says that it applies to "any city, village, town, county or school district." Id. Accordingly, the majority concludes that "Milwaukee may no longer enforce its residence requirement." Id.

### III.

¶90 The majority's conclusion contravenes the well-recognized purpose of the Home Rule Amendment, which is to grant

5

power and self-government to municipalities, rather than the legislature.

¶91 Adopted in 1924, "the home rule amendment was intended to provide cities and villages with greater autonomy over local affairs." Madison Teachers, 358 Wis. 2d 1, ¶89; see also State ex rel. Sleeman v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928) ("The recognized purpose of this amendment was to confer upon cities and villages a measure of self-government not theretofore possessed. It is a grant of power to cities and villages.").[4]

¶92 Significantly, this grant of local power was intended to free municipalities from legislative interference. Sleeman, 195 Wis. at 447. This court explained that "[i]n ascertaining the meaning of the home-rule amendment we should also take into account the fact that the legislature was not hostile to a larger measure of local self-government by cities." Van Gilder v. City of Madison, 222 Wis. 58, 71, 267 N.W. 25 (1936).

---

[4] State ex rel. Sleeman v. Baxter, 195 Wis. 437, 445, 219 N.W. 858 (1928), sets forth the parameters of this grant of power to cities and villages as follows:

> There is no express limitation upon the power of the legislature. Such limitations as may be found therein are limitations upon the exercise of the power granted and not limitations upon the power of the legislature. Power is granted to cities and villages 'to determine their local affairs and government subject only to this constitution and to such enactments of the legislature of state-wide concerns as shall with uniformity affect every city or every village.' The phrase 'subject only to this constitution,' etc., is a phrase of limitation, but it is a limitation upon the power granted to cities and villages.

6

¶93 In order to effect the purpose of the Home Rule Amendment, the "constitutional expression of the will of the people is to be liberally construed." State ex rel. Michalek v. LeGrand, 77 Wis. 2d 520, 526, 253 N.W.2d 505 (1977). The majority pays only lip-service to the purpose of the Home Rule Amendment. It then focuses exclusively on the power of the legislature, rather than the expansive powers granted to municipalities under the Home Rule Amendment. Majority op., ¶24. As set forth below, the majority's analysis of the Home Rule Amendment threatens to give license to the legislature to invade any city it chooses with legislation targeted at matters of purely local concern.

IV.

¶94 Not only does the majority contravene the well-recognized purpose of the Home Rule Amendment, it ignores the facts of record regarding statewide and local interest. Without consideration of the evidence in the record, the majority "assume[s], without deciding, that Wis. Stat. § 66.0502 is a matter of local affairs." Majority op., ¶32.

¶95 In its discussion of the purported statewide interest behind Wis. Stat. § 66.0502, the majority gives great deference to the statute's legislative policy statement without acknowledging the complete dearth of evidence in support of a statewide interest. The primary statewide interest identified by the majority is the fact that the "Legislature specially included a public policy statement in Wis. Stat. § 66.0502." Majority op., ¶30. This statutory policy simply states: "The

7

legislature finds that public employee residency requirements are a matter of statewide concern." Wis. Stat. § 66.0502(1).

¶96  Rather than address the fact that there is no evidence in the record supporting a statewide interest, the majority repeatedly asserts that legislative enactments are "entitled to great weight."  Majority op., ¶30.  According to the majority, "it is the province of the legislature, not the court, to determine public policy because as the voice of the people it is the best judge of what is necessary to meet the needs of the public."  Majority op., ¶30 (citing Flynn v. Dep't of Admin, 216 Wis. 2d 521, ¶24, 576 N.W.2d 245 (1988) (internal quotations omitted).

¶97 Although the legislative declaration is due great weight deference, it is certainly not dispositive.  Van Gilder, 222 Wis. at 73.  As the Van Gilder court explained, this court is required to make the ultimate determination when there is a controversy between municipalities and the state regarding whether a matter is of local or state-wide concern:

> The home-rule amendment does not lodge the power to determine what is a 'local affair' or what is a 'matter of state-wide concern' either with the municipality or with the legislature or attempt to define those terms.  In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination.

Id.

¶98  It is the unique role of the courts to determine the constitutionality of statutory provisions.  Marbury v. Madison, 5 U.S. 137, 177 (1803).  No legislative declaration can usurp this power or release us of this duty.  Consequently, as the

8

court of appeals explained, "the argument that residency requirements are a matter of statewide concern simply because the legislature said so is not persuasive because it is unsubstantiated." Black, 364 Wis. 2d 626, ¶21.

¶99 In determining whether legislation addresses a statewide interest, it is necessary to examine whether the statutory policy expressed in Wis. Stat. § 66.0502(1) is supported by the evidence in the record. As the court of appeals repeatedly observed, there is scant evidence in the record supporting a legitimate statewide interest:

> The effect on the state . . . is never substantiated, and only given lip-service with broad policy arguments. This complete dearth of evidence to support the legislature's contention does not suffice under the law.
>
> . . .
>
> The problem with the Police Association's argument, however, is that no evidence in the record allows us to conclude that § 66.0502 was drafted with the public's health, safety or welfare in mind. . . . Instead, the sole reason we can delineate for the statute's existence is the gutting of Milwaukee's long-standing residency requirement.
>
> . . .
>
> More importantly, there is no evidence in this record supporting this assertion [that Wis. Stat. § 66.0502 protects employees against 'unfairly restrictive' conditions].

Id., ¶¶21, 22, 24.

¶100 Not only does the majority ignore the dearth of evidence supporting a statewide interest, it fails to address the overwhelming evidence in support of the city of Milwaukee's local interest in enforcing its residency requirements. The

majority's "assume without deciding" approach allows it to avoid discussion of the dire consequences this legislation will inflict on the city of Milwaukee.

¶101 Detroit's experience after similar residency requirements were abolished in Michigan foreshadows the impending consequences of the majority's decision in this case. As the unanimous court of appeals explained, "abolishing residency requirements could result in Milwaukee's suffering the same economic decline recently experienced by the city of Detroit." Id., ¶7. After Detroit's residency requirement was eliminated, fifty-three percent of the police force moved outside the city, contributing to a population decline that had significant economic consequences.[5]

¶102 In this case, the Legislative Fiscal Bureau prepared a report detailing the expected impact of Wis. Stat. § 66.0502 on the city of Milwaukee, which employs over 7000 people, with approximately half of those employed as police officers or firefighters. Milwaukee Mayor Tom Barret's affidavit attests that $366.8 million of Milwaukee's budget is spent on city employees' salaries and wages. Mayor Barret's affidavit further explains that nearly half of Milwaukee's total operating costs go towards salaries for police officers and firefighters.

¶103 The projected outflow of Milwaukee's city employees will cause a reduction in the tax base of $622 million in

_____

[5] Local Government Employee Residency Requirements, Legislative Fiscal Bureau, Joint Committee on Finance, Paper #554 at 6 (May 9, 2013).

10

residential land values and $27 million in retail property values. As Judge Kessler explained in her concurrence to the court of appeals decision, "[a] loss of $649 million from the Milwaukee tax base will obviously directly impact Milwaukee's ability to pay for necessary infrastructure, services and wages. There is no evidence in the record that any other municipality would likely be similarly affected." Id., ¶42 (Kessler, J. concurring).

¶104 Wis. Stat. § 66.0502 also interferes with Milwaukee's ability to promptly respond to emergencies. Allowing city employees to live outside the city may result in slower service times during emergencies.[6] Milwaukee police are expected to be responsible for any police matter that comes to their attention at any time. See Milwaukee Police Department Rule 4 § 025.00 (Rev. July 2008). A police officer's ability to respond to local emergencies at any time is reduced when the officer no longer lives in the community in which he or she works.

¶105 Additionally, the city of Milwaukee Police Chief's affidavit explains that having police officers live in the city is "critical to the police force's legitimacy and perceived integrity." Black, 364 Wis. 2d 626, ¶29. According to Police

---

[6] The court of appeals aptly noted that "the fifteen-mile rule set by § 66.0502(4)(b,c), which allows local governments to impose requirements that employees live within fifteen miles of the city or county that employs them, implicitly recognizes that citizens are safer and better served when emergency responders live nearby." Black v. City of Milwaukee, 2015 WI App 60, ¶28, 364 Wis. 2d 626, 869 N.W.2d 522.

11

Chief Flynn, community policing increases the effectiveness of the police force and the safety of the city:

> We have an ongoing struggle, as every urban police department does, to maintain our credibility in the community we police. The residency requirement helps to prevent the perception . . . that officers are outsiders, without any empathy for those they are policing, because [they] invade residents' neighborhoods and later return to distant retreats . . .
>
> . . .
>
> Police officers who live in the community they police have an increased motivation to maintain a safe environment for themselves, their families, their co-officers, and the community as a whole.

Id. Commenters agree with this view, explaining that cities with residency requirements have experienced the benefit of improved neighborhoods and lower crime. See, e.g., Joe Mulligan, Not in Your Backyard: Ohio's Prohibition on Residency Requirements for Police Officers, Firefighters, and Other Municipal Employees, 37 U. Dayton L. Rev. 351, 369 (2012).

¶106 Given the overwhelming evidence of the effect that Wis. Stat. § 66.0502 will have on the city of Milwaukee, I conclude that the elimination of residency requirements addresses a matter primarily of local concern.

V.

¶107 The majority further avoids the damaging facts in the record by creating a heretofore unknown facial uniformity rule that essentially repeals the Home Rule Amendment. As the Madison Teachers' court explained, "home rule challenges are, by

12

necessity, fact-specific inquiries. . . ." 358 Wis. 2d 1, ¶113.

¶108 Avoiding discussion of the facts of this case, the majority contends that "[f]or the purposes of the home rule amendment, an enactment is uniform when it is facially uniform." Majority op., ¶7. After making this pronouncement, the majority summarily concludes that because the text of Wis. Stat. § 66.0502 applies to "any city, village, town, county, or school district," it is facially uniform. Id.

¶109 This ipse dixit approach of the majority threatens the independence of the court.[7] It appears to surrender to the legislature our constitutional role of renewing legislative enactments. Instead of engaging in a constitutional analysis of whether the statute affects with uniformity, in essence it concludes "well . . . the text says it does."

¶110 Relying on Thompson v. Kenosha County, 64 Wis. 2d 673, 676, 221 N.W.2d 845 (1974), the majority asserts that "facial uniformity is sufficient to satisfy the home rule amendment's uniformity requirement." Majority op., ¶36. However, Thompson is distinguishable because it examined legislation that gave, rather than eliminated, municipalities' power to govern their local affairs. 64 Wis. 2d at 687.

¶111 As the Thompson court explained, conferring equal power satisfies the uniformity requirement because

---

[7] See, e.g., Marmolejo-Campos v. Holder, 558 F.3d 903, 930 (9th Cir. 2009) ("This purported explanation is a non-explanation——an ipse dixit or 'because I said so' edict.").

13

municipalities retain the right to enact the ordinances they choose:

> Each county in the state has an equal right to decide to adopt a countywide assessor system. The residents of all cites, villages, and towns have an equal right to participate in making that decision through their right to vote for and petition county board members. **Where a statute confers equal legal powers, that would seem sufficient to satisfy the uniformity requirement.** Thus, for example, two cities may have identical powers, yet the respective city councils may enact entirely different sets of ordinances.

Id. Thompson thus concluded that "[t]he state could hardly be held to have violated the uniformity requirement in such a situation." Id.

¶112 Granting municipalities power is distinguishable from the elimination of Milwaukee's residency requirement under Wis. Stat § 66.0502. When the legislature grants every municipality power over an area of governance, each municipality is uniformly affected because it retains the discretionary authority to act under that power.

¶113 In contrast, the elimination of residency requirements restricts, rather than expands a grant of local power. Here, municipalities without an employee residency requirement will be unaffected by Wis. Stat. § 66.0502, but it will have an outsize effect on the city of Milwaukee which did have a residency requirement.

¶114 Admittedly, Van Gilder presents a more challenging precedent. It sends mixed messages and ultimately lands on a constitutional interpretation that is at odds with the text of the constitutional Home Rule Amendment.

14

¶115 Initially Van Gilder signals an interpretation that honors the language of the constitutional amendment. "The power[] of municipalities . . . to enact an organic law dealing with local affairs and government is subject to such acts of the legislature relating thereto as are of state-wide concern and affect with uniformity all cities." Van Gilder, 222 Wis. at 73.

¶116 Later, however, Van Gilder lands on an interpretation that is at odds with the text of the Home Rule Amendment: "when the legislature deals with local affairs as distinguished from matters which are primarily of state-wide concern, it can only do so effectually by an act which affects with uniformity every city." Id. at 80-81.

¶117 The latter misguided interpretation of the constitutional Home Rule Amendment has been adopted by subsequent courts, including recently by this court in Madison Teachers and by the majority today.

¶118 In Madison Teachers, this court interpreted the Home Rule Amendment to mean that legislative enactments will trump local laws if they either address a statewide matter or uniformly affect every municipality. 358 Wis. 2d 1, ¶101. If the matter is primarily a local concern, Madison Teachers instructs that the court must determine whether the statute uniformly affects every municipality. Id. If the statute satisfies the uniformity requirement, it does not violate the Home Rule Amendment. Id. I dissented in Madison Teachers.

¶119 Contrary to the majority's interpretation, I agree with the amicus briefs of the League of Wisconsin Municipalities

and the Wisconsin Institute for Law and Liberty, as well as the brief of the city of Milwaukee and the unanimous court of appeals' observation that "the test articulated in Madison Teachers is somewhat at odds with the plain language of the home rule amendment." Black, 364 Wis. 2d 626, ¶15.

¶120 The majority here continues this error. I interpret the home rule constitutional amendment to mean what it says: the legislature can enact a law superseding a municipality's charter ordinance if the law is of "state wide concern as with uniformity shall affect every city or every village."[8]

¶121 A legislative act must be of statewide concern and then it must apply uniformly. The majority's interpretation provides otherwise. It states that a legislative act can supersede a city's charter ordinance dealing with solely local matters, with no statewide concern whatsoever, as long as it does so uniformly. Thus, the majority simply ignores the requisite "statewide concern" language of the Home Rule Amendment.

¶122 Additionally, the majority also ignores the lack of uniform effect. Although Wis. Stat. § 66.0502 does not name any particular municipality, it will have an outsizes effect on the city of Milwaukee for the reasons set forth above, including a projected loss of $649 million from Milwaukee's tax base.

---

[8] Because the textual analysis of the Home Rule Amendment is set forth in ¶4 of Justice Rebecca Bradley's concurrence, I need not repeat that analysis here.

16

¶123 The effect on other Wisconsin municipalities is simply not addressed by the majority opinion. As the court of appeals aptly states, "the notion that a statute purporting to gut the tax bases and compromise the neighborhood integrity of all municipalities would pass both houses of the legislature defies logic." Id., ¶33. The majority's newly created facial uniformity rule eliminates the requirement that courts review the factual particulars of a home rule challenge.

¶124 Under the majority opinion, the only legislation that would not uniformly affect all municipalities is one that would overtly single out a particular city or village. The legislature is now free to search for laws unique to Milwaukee, Madison, Green Bay, or any other municipality of its choosing and enact facially neutral legislation abrogating individual local laws.

¶125 Ultimately, the majority opinion disregards the fundamental rule that "we interpret the home rule amendment with an eye toward preserving the constitution." Id., ¶32 (citing State ex rel. Ekern v. City of Milwaukee, 190 Wis. 633, 639, 209 N.W. 860 (1926)). As the court of appeals warned, a facial uniformity standard "all but obliterate[s] the home rule amendment, which is not only illogical but also contrary to law." Id.

¶126 In sum, I conclude that the city of Milwaukee may enforce its residency requirement under the powers granted to local municipalities by the Wisconsin Constitution's Home Rule Amendment. I would therefore affirm the court of appeals

17

determination that Wis. Const. art. XI, § 3(1) precludes application of Wis. Stat. § 66.0502 to Milwaukee Ordinance 5-02. Accordingly, I respectfully dissent.

¶127 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON, J. joins this concurrence/dissent.